CARSTAIRS et al. v. AMERICAN BONDING & TRUST CO.

(Circuit Court, E. D. Pennsylvania.  January 18, 1902.)

No. 16.

FIDELITY INSURANCE—FALSE STATEMENTS OF EMPLOYER.

  Where a fidelity insurance policy provided that statements theretofore or thereafter made by the employer relative to the subject of the risk should constitute an essential part and form the basis of the contract, and to secure renewal of such policy the employer certified that on a certain day the books and accounts of the employé were examined, and found correct, and all moneys handled by him accounted for, and that nothing was known affecting unfavorably his title to confidence, when in fact no examination of his books or accounts had been made for nearly a year prior to the date stated, and he was on such date a de-

faulter in a large sum, as a cursory examination of his books would have shown, the renewal of such policy, based on such certificate, was void.[1]

Motion for Judgment Non Obstante Veredicto.

Jos. De F. Junkin, for plaintiffs.

Francis B. Bracken, for defendant.

J. B. McPHERSON, District Judge. This suit is brought upon policy of fidelity insurance, taken out by the Bourse Restaurant Company upon its general manager, Carl G. Essner, which contains, among others, the following provision:

"And whereas, the employer has delivered to the [bonding] company certain statements and declarations relative to the duties and accounts of the employed, the manner of conducting the business of the employer, and other matters, which, together with any statements or declarations hereafter required by or lodged with the [bonding] company, do and shall constitute an essential part and form the basis of this contract."

The policy was issued in December, 1895, for one year, but annual renewals were afterwards made; the last renewal continuing the policy from December, 1899, to December, 1900. The principal defalcations of the employed took place during a period from, say February 9 to May 12, 1900.

Several defenses are interposed to recovery, of which I think only one need now be noticed. In December, 1899,—shortly before the renewal then in force would expire,—the defendant notified the restaurant company that the policy was about to come to an end, and inclosed the usual certificate to be executed by the company as a condition precedent to continuing the contract. This certificate, which was duly signed and delivered to the defendant on behalf of the restaurant company before the last renewal was issued, is as follows:

"This is to certify that on the 23rd day of December, 1899, the books and accounts of Mr. C. G. Essner, in our employ as * * *, were examined by us, and we found them correct in every respect, and all moneys handled by him accounted for, to the best of our knowledge and belief.

"He has performed his duties in an acceptable and satisfactory manner. We know of nothing in his habits or antecedents affecting unfavorably his title to confidence, and we know of no reason why the guaranty bond issued on his behalf by the American Bonding & Trust Co. should not be continued. His salary now is * * *."

This certificate, therefore, was a statement or declaration received by and lodged with the defendant, in accordance with the foregoing provision of the policy, and became the basis, or an essential part, of the contract for the ensuing year. If, therefore, it was false in any material particular, it follows of necessity that the contract was void. Upon this point the testimony is undisputed. No examination whatever had been made of the books and accounts of the employed at the date named, or for nearly a year before; and it appeared distinctly that the certificate was made in mere reliance upon the correctness of a statement presented to the restaurant company early in December by the bookkeeper of Mr. Essner. It further appeared that when the certificate was made even a hasty

[1] Fidelity insurance, see note to Indemnity Co. v. Wood, 19 C. C. A. 273.

examination of the books would have disclosed the fact that the employed had drawn out, and apparently applied to his individual use, more than $3,700 of the restaurant company's money. Part of this sum he afterwards repaid, but about $1,000 never was restored, and this amount helps to make up the total of the moneys abstracted.

Under these circumstances I do not see much room for discussion. If an examination of the employed's accounts had been made, the employer would probably not have been bound to do more than act in this regard with reasonable diligence and in good faith (Guarantee Co. v. Merchants' Sav. Bank & Trust Co., 26 C. C. A. 146, 80 Fed. 777); but, where no examination at all is made, in spite of a positive certificate to the contrary, the employer must at least be charged with knowledge of what appears on the very surface of the accounts. What thus appears was an apparent embezzlement of the employer's money, and of this fact it need hardly be said the defendant was entitled to be informed. It may have been capable of an explanation consistent with innocence, but the prima facies pointed toward guilt, and it is now clear that guilt was the fact behind the appearance. In other words, the employed was an embezzler at the very time when his employer was taking the risk of declaring that his books and accounts were "correct in every respect," that "all moneys handled by him [had been] accounted for," and that there was "no reason why the guaranty bond * * * should not be continued." Because of these material misstatements, the last renewal was void.

This question was raised by the defendant's point asking for binding instructions; and, as the point was reserved, and as I think it must be answered in the defendant's favor, it is unnecessary to consider now the other questions that were presented and argued in support of the pending motion. Judgment will be entered on the reserved point for the defendant, notwithstanding the verdict.