[No. 4177. Decided February 25, 1902.]

# W. H. REMINGTON, *Appellant,* v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *Respondent.*

GUARANTY BOND — FIDELITY OF EMPLOYEE — NOTICE OF DEFALCATIONS — QUESTION FOR JURY.

Whether or not the delay of an employer of forty-five days in giving a guaranty company notice of the discovery of the dishonesty of a clerk whom the company had guaranteed, was unreasonable, is a question for the jury, under a bond conditioned that the company should have immediate notice, since immediate notice ordinarily means within a reasonable time and the question of reasonableness of time depends upon the circumstances of the particular case.

SAME — RETENTION OF EMPLOYEE AFTER DEFALCATION.

Where a guaranty company bond is conditioned that if the employer, without consent of the company, shall intrust his employee with money after having discovered any act of dishonesty, the bond shall be null and void, the act of the employer in retaining his employee in a position of trust after discovery of his dishonesty is at his own risk, and he cannot hold the guaranty company liable for defalcations occurring after his discovery and before notice to the guaranty company.

SAME — CONDONATION.

A provision in a guaranty company bond that it shall be null and void, if the employer shall condone any act of a dishonest employee for which the company may be liable, or make any settlement with the employee for any loss under the bond, is not violated by the acceptance on the part of the employer of money and property turned over by the employee in part payment of the indebtedness due to his defalcation, when such payment was not accepted with intent to condone the offense and was used to reduce the amount claimed from the guaranty company.

SAME — CERTIFICATE OF EMPLOYER CONTINUING BOND — REPRESENTATION OR WARRANTY.

A guaranty bond for the faithfulness of an employee provided that the bond might be continued from year to year, so long as the company should consent, upon payment of the premium rate agreed on. At the expiration of the year for which the bond had

been issued, the employer, in order to continue it in force, certified to the guaranty company that the books and accounts of such employee had been examined by him, found correct, all moneys handled by the employee accounted for, and he knew of no reason why the guaranty bond should not be continued. *Held*, that in the absence of a showing of fraud in obtaining the extension, the certificate was merely a representation of a fact and not a warranty of its truth.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM O. CHAPMAN, Judge. Reversed.

*Walter M. Harvey* and *James M. Ashton*, for appellant.

*Wilshire & Kanaga* and *Ira A. Town*, for respondent.

The opinion of the court was delivered by

MOUNT, J.—Appellant about the month of May, 1898, employed one John F. Bishop as his cashier and bookkeeper in the city of Tacoma. At the time of this employment Mr. Bishop was required to furnish to appellant a surety company bond protecting appellant against dishonesty. Respondent on July 12, 1898, issued its bond, substantially as follows:

"Whereas, John Franklin Bishop, hereinafter called the 'employee,' has been appointed to the position of cashier and bookkeeper in the service of William H. Remington, hereinafter called the 'employer,' and has been required to furnish a bond for his honesty in the performance of his duties in the said position; and

"Whereas, the employer has delivered to the Fidelity and Deposit Company of Maryland, a corporation of the State of Maryland, hereinafter called the 'company,' certain statements and declarations relative to the duties and accounts of the employee, the manner of conducting the business of the employer, and other matters, which, together with any statements or declarations hereinafter required by or lodged with the company, do and shall constitute an essential part and form the basis of this contract;

"Now, therefore, in consideration of the sum of $35 paid as a premium for the period from July 1, 1898, to July 1, 1899, at 12 o'clock, noon, and upon the faith of the said statements and declarations as aforesaid by the employer, it is hereby agreed and declared that, subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall, at the expiration of three months next after proof of a pecuniary loss, as hereinafter mentioned, has been given to the company, reimburse to the employer, to the extent of the sum of $5,000, and no further, such pecuniary loss as the employer shall have sustained by any act of fraud or dishonesty amounting to larceny or embezzlement upon the part of the employee in the performance of the duties of the office or position in the service of the employer hereinbefore referred to, as the same have been stated in writing by the employer to the company, and occurring during the continuance of this bond, and discovered during said continuance, or within six months after the death, resignation, or removal of the employee from the service of the employer, or the expiration or cancellation of this bond, whichever of these events shall first happen.  This bond may be continued from year to year, at the option of the employer, at the same or an agreed premium rate, so long as the company shall consent to receive the same, in which event the company shall remain liable for any act of fraud or dishonesty amounting to larceny or embezzlement committed by the employee between the original date of this bond and the time to which it shall have been continued; *provided,* that the liability of the company as surety for the employee to the employer shall not exceed the amount above written, whether the loss shall occur during the term named, or during any continuation or continuations thereof, or partly during the said term and partly during said continuation or continuations. That the employer shall immediately give the company notice, in writing, by a registered letter addressed to the president of the company, Baltimore, Maryland, of the discovery of any default or loss

hereunder, and shall file with the company his claim hereunder, with full particulars thereof (duly certified to, if required by the company), immediately thereafter, and any claim which shall not be filed by the employer with the company within six months after the expiration or cancellation of this bond, or within six months after the employee shall have ceased to be in the employer's service, shall not be payable hereunder. And upon the making of such claim this bond shall wholly cease and determine as regards any liability for any act of the employee committed subsequent to the discovery of such loss, and this bond shall be surrendered to the company on payment of such claim. . . . That this bond shall become void, as to any claim for which the company is responsible hereunder to the employer, if the employer shall fail to notify the company of the occurrence of such act immediately after it shall have come to the knowledge of the employer. And if, without previous notice and consent of the company thereto, the employer has intrusted or shall intrust the employee with money, securities, or other personal property, after having discovered any act of dishonesty, or condones any act for which the company may be liable hereunder, or makes any settlement with the employee for any loss hereunder, this bond shall be null and void, and any wilful misstatement or suppression of facts in any claim hereunder renders this bond void from the beginning."

This bond was at its expiration on July 1, 1899, continued in force until July 1, 1900. Prior to the time of the issuance of the certificate continuing the bond in force, appellant made a certificate as follows:

"This is to certify that on the 20th day of July, 1899, the books and accounts of Mr. J. F. Bishop, in our employ as bookkeeper and cashier, were examined by us and we find them correct in every respect, and all moneys handled by him accounted for. He has performed his duties in an acceptable and satisfactory manner, and we know of no rea-

son why his guarantee bond should not be continued.  His salary is now $100, and he is employed as same.

Dated Tacoma, Wash., July 24th, 1899.

(Signed)     W. H. REMINGTON, Employer."

At the time this certificate was made, and for some time thereafter, appellant had no knowledge or suspicion that Mr. Bishop was in default or dishonest in any way; but in fact at that time Bishop had embezzled a considerable sum of money from appellant.  On August 20, 1899, appellant, having become suspicious of the conduct of Bishop, confronted him with acts of dishonesty, whereupon Bishop confessed to the appellant that he had taken funds belonging to appellant amounting to about $300; stating that the amount would not exceed $500 or $600.  Appellant thereupon required Bishop to make up a statement of his shortage.  Some two or three days later Bishop made a statement showing a shortage of $1,299, beginning at a period about April 1, 1899.  Appellant several days previous to August 20th had suspended the authority of Bishop to draw checks, but continued him in his employ until April 15, 1900.  As soon as appellant learned of the dishonesty of Bishop, he endeavored to obtain the services of a bookkeeper to ascertain the exact amount of Bishop's defalcation.  A bookkeeper was obtained about the first of September, 1899.  This bookkeeper finished an examination of the books and accounts on October 2, 1899, which examination showed the defalcation of Bishop to be $2,666.58, a part of which was taken by Bishop after August 20, 1899.  Notice of the discovery of the defalcation, and the amount thereof, was sent by appellant to the respondent on October 3, 1899, by registered mail.  Pending the examination of the books of appellant, Bishop and his wife turned over to appellant some $200 in money and some household goods and other articles, amounting to about the sum of $300,

28—27 WASH.

which were received by appellant "for whom it might concern," and credited on Bishop's shortage, reducing the amount thereof to the sum of $2,666.58 as above stated. This action was afterwards brought by appellant against respondent to recover the sum of $2,666.58. The facts substantially as set out above were proven to the jury. Respondent thereupon moved the court for a non-suit and judgment against appellant, upon substantially the following grounds: (1) That the plaintiff failed to immediately give the defendant company notice of the discovery of the default or loss under the bond; (2) that, after plaintiff had discovered that Bishop was a defaulter, plaintiff, without notice to and without consent of defendant, intrusted Bishop with money, securities, and property, and by reason thereof Bishop subsequently embezzled a large part of the money sued for; (3) that, after plaintiff knew that Bishop had committed acts of dishonesty for which defendant company would have been liable under the bond sued on, plaintiff made a settlement with Bishop without the knowledge or consent of the defendant; (4) that the statement made in the certificate for renewal was a warranty for the renewal of the bond, and that the facts stated therein were untrue, and that plaintiff knew or ought to have known that said statements were untrue at the time of making the same. This motion was sustained by the court. Judgment was entered in favor of defendant for costs, and from this judgment plaintiff appeals, alleging error of the court in sustaining the motion for a non-suit.

The questions presented here depend largely upon the construction of the conditions of the bond. The provision relied upon by respondent to sustain the first ground of the motion is as follows:

"That the employer shall immediately give the company notice, in writing, by a registered letter addressed to the

president of the company, Baltimore, Maryland, of the discovery of any default or loss hereunder, and shall file with the company his claim hereunder, with full particulars thereof (duly certified to, if required by the company), immediately thereafter, and any claim which shall not be filed by the employer with the company within six months after the expiration or cancellation of this bond, or within six months after the employee shall have ceased to be in the employer's service, shall not be payable hereunder. And upon the making of such claim this bond shall wholly cease and determine as regards any liability for any act of the employee committed subsequent to the discovery of such loss, and this bond shall be surrendered to the company on payment of such claim. . . . That this bond shall become void as to any claim for which the company is responsible hereunder to the employer, if the employer shall fail to notify the company of the occurrence of such act immediately after it shall have come to the knowledge of the employer. And if, without previous notice and consent of the company thereto, the employer has intrusted or shall intrust the employee with money, securities, or other personal property, after having discovered any act of dishonesty, or condones any act, for which the company may be liable hereunder, or makes any settlement with the employee for any loss hereunder, this bond shall be null and void, and any wilful misstatement or suppression of facts in any claim hereunder renders this bond void from the beginning."

Bonds of this character are, in their nature, insurance contracts, to indemnify the employer against the dishonesty of employees. They are issued for profit, and the same rules of construction must apply thereto as apply to other insurance contracts. If, looking at all its provisions, the contract is fairly and reasonably susceptible of two constructions, one favorable and the other unfavorable to the insurance company, the latter, if consistent with the object for which the contract was made, must be adopted,

for the reason that the instrument which the court is required to interpret was prepared by the attorneys, officers, or agents of the insurance company. *American Surety Co. v. Pauly,* 170 U. S. 133 (18 Sup. Ct. 552) ; *Guarantee Co. v. Merchants Sav. Bank & Trust Co.,* 80 Fed. 766 ; *Travelers Insurance Co. v. Myers,* 62 Ohio St. 529 (57 N. E. 458, 49 L. R. A. 760) ; 13 Am. & Eng. Enc. Law (2d ed.), p. 10.

The provisions in the contract above quoted are for the protection of the insurance company. They were not intended to avoid an existing liability under the contract, or as a means of defeating recovery thereon, but only to prevent further liability after discovery of dishonesty by the employer. For such purpose the provisions are reasonable and will be maintained, but if they are to be considered as a shield to avoid a liability legally and rightfully due, or to avoid a contract properly made, they are a fraud upon the rights of the insured and cannot be upheld. The words "the employer shall immediately give notice to the company" should receive such interpretation as not to fritter away the substantial rights of the parties, nullify the contract, or promote fraud. Immediate notice ordinarily means, in this connection, within a reasonable time, with due diligence under the circumstances of the particular case, and without unnecessary or unreasonable delay, of which the jury are ordinarily to be the judges. 2 May, Insurance (4th ed.), § 462 ; 4 Joyce, Insurance, § 3292. And whether a time is reasonable or not depends upon the circumstances of the particular case. Where the facts are undisputed, and the minds of reasonable men may not differ upon them, the question becomes one at law for the court; but where reasonable minds may differ upon a given state of facts, the question then is for the jury, and not for

the court.    It is undisputed in this case that Mr. Bishop told the plaintiff on August 20th that he had taken funds of the plaintiff.    The amount of the funds taken was not known to the plaintiff until October 2d following.    Notice was given defendant the next day.    Plaintiff's excuse for not notifying defendant prior to October 3d was that he construed the contract to mean, and was advised, that he should furnish the company full particulars, with the exact amount of funds taken, and obtain facts sufficient to convict Mr. Bishop of the crime of larceny or embezzlement; that he immediately set about obtaining this information; and that, on the day following the determination of the amount taken, notice was sent by registered mail to the company's office in Baltimore, Maryland.    The bond on August 20th became a subsisting liability against respondent for the amount of the defalcation at that time. One object of immediate notice, no doubt, was to place it in the power of the company to prevent further liability.    Another, probably, was to allow an opportunity to punish the offender, or to secure from the offender reimbursement.    These conditions, as we have said, are for the benefit of the company; but, where the company did not suffer on account of the notice not being immediately given, no advantage can be taken of the delay, unless it should be unreasonable.    The fact then that notice was not given on the instant of the knowledge or discovery of wrong was not of itself sufficient to avoid the contract from the beginning.    Under the circumstances of this case, the question whether or not the plaintiff gave the notice within the time required by the contract was a question for the jury.

2.    Respondent contends that because appellant, after information that Bishop was dishonest, intrusted him with

money, securities, or other personal property, without notice to or consent of the respondent, this avoided the contract from the beginning. The contract provides that if the employer, without previous notice to and consent of the company, shall intrust the employee with money, securities, or other personal property after having discovered any act of dishonesty, the bond shall be null and void. This provision, of course, means that the contract shall not protect an employer against the acts of embezzlement after knowledge to the employer of dishonesty, and without previous notice to the company, where the employee is allowed to continue in a position to continue his dishonesty. This is a reasonable provision, because the employer may protect himself by discharging the employee, while the company must rely upon the employer furnishing notice of acts of dishonesty, and the employer in the contract agrees so to do. The facts in regard to this question are substantially as follows: Appellant on about August 5, 1900, became suspicious of Bishop, and suspended his authority to draw checks as he had previously done. On August 20th Bishop confessed that he had wrongfully obtained money to the extent of five or six hundred dollars. Appellant's business was large, and in such condition that he could find no one else to take charge of his office. It was necessary for him to make a trip out of the state. Before going he made several unsuccessful efforts to employ some one to take charge of his affairs, and finally arranged with a Tacoma bank to obtain a bookkeeper, but this bookkeeper could not take charge of appellant's office for several days. Appellant thereupon went about his business outside of the state of Washington, and in the meantime left Bishop in charge of the office. While appellant was absent, Bishop forged several

checks and obtained money thereon. Notice of Bishop's dishonesty was not sent to the company, and the company had no knowledge thereof until subsequent to October 4th. Under these circumstances, the surety company cannot be held liable for moneys obtained after notice to appellant of Bishop's dishonesty, and before notice to the company. This clause in the contract was evidently intended to cover such cases. Respondent should not be required, against its will, to insure against dishonest employees who are known to be such. When the appellant left Bishop in charge of his office without notifying the company, he must, under the express conditions of the bond, have assumed whatever risk there was in the dishonesty of Bishop, of which he had notice. As to the money taken subsequent to August 20th, no recovery can be had upon the bond in this case.

3.    The evidence upon the question raised by the third ground of respondent's motion is to the effect that Bishop desired to repay the money, but was not able to do so, and that the money which was turned over by Bishop and his wife was not paid in settlement or condonation of the offense or any act of Bishop, but was turned over and received by appellant as a credit on the amount taken, and it was so stated at the time by appellant to Bishop, and the company was given the benefit thereof, by a reduction of the amount of the defalcation. This was not a settlement or a condonation, within the meaning of the contract; nor do we think the evidence shows any intent on the part of appellant to release Bishop in any way or to settle with him or condone any act of Bishop, but was done with the express understanding that it should be applied as a credit only on the amount embezzled.

4.    It is last contended that the statement made in the certificate of renewal was a warranty, and that plaintiff

knew, or ought to have known, that said statements were untrue at the time of making the same. The bond provides as follows:

"This bond may be continued from year to year, at the option of the employer, at the same or an agreed premium rate, so long as the company shall consent to receive the same, in which event the company shall remain liable for any act of fraud or dishonesty amounting to larceny or embezzlement committed by the employee between the original date of this bond and the time to which it shall have been continued; *provided,* that the liability of the company as surety for the employee to the employer shall not exceed the amount above written, whether the loss shall occur during the term above named, or during any continuation or continuations thereof, or partly during said term and partly during said continuation or continuations."

The evidence shows that, at the time Bishop applied for the original bond, respondent submitted questions to appellant as follows:

"12. (a) What means will you use to ascertain whether his accounts are correct? Answer: His monthly statements and bank account. (b) How frequently will they be examined? A. Each thirty days."

The evidence shows that during the time of the employment this examination was made by appellant on or about the 20th of each month; that after the expiration of the first year of the bond the examination was made on the 20th day of July, and on the 24th the certificate was made in which the appellant certifies that the books and accounts were examined, and were found correct in every respect, and all moneys handled by him accounted for. At the time of this examination the appellant and Bishop made the examination which appellant had agreed to make, and which it was his custom to make, and at that time the books were apparently correct, and he had no knowledge

or suspicion of any default, and had no means of determining that there was any default, on the part of Bishop, without an expert examination of all his accounts and transactions, which would require an expert bookkeeper, and which he himself was not competent to make. The certificate appears from the evidence to have been made in the utmost good faith. There was no fraud practiced by the appellant in obtaining the extension of the insurance. The certificate under these circumstances was a representation of a fact, not a warranty of the truth thereof. *Moulor v. American Life Ins. Co.,* 111 U. S. 342 (4 Sup. Ct. 466); *National Bank v. Hartford Fire Ins. Co.,* 95 U. S. 673; *Alabama G. L. Ins. Co. v. Johnston,* 80 Ala. 467 (2 South. 125, 60 Am. Rep. 112); *Rogers v. Phenix Ins. Co.,* 121 Ind. 570 (23 N. E. 498); *Phoenix Assurance Co. v. Munger, etc., Mfg. Co.,* 92 Tex. 297 (49 S. W. 222); *Aetna Ins. Co. v. Simmons,* 49 Neb. 811 (69 N. W. 125); *Thomas v. Grand Lodge,* 12 Wash. 500 (41 Pac. 882); *Fidelity & Casualty Co. v. Gate City National Bank,* 97 Ga. 634 (25 S. E. 392, 33 L. R. A. 821, 54 Am. St. Rep. 440).

The default was discovered within a month after the renewal was made. Certainly the respondent, under the original contract, was liable for any defalcation discovered within six months after the expiration of the contract, according to the terms thereof. A part of the defalcation complained of had accrued during the first year of the bond, and a part after the renewal thereof.

We are satisfied the facts proved established a case for the jury, and that the court erred in granting the motion for judgment for defendant. The cause will therefore be reversed and a new trial ordered.

REAVIS, C. J., and WHITE, HADLEY, FULLERTON and DUNBAR, JJ., concur.