[No. 8497. Department One. March 28, 1910.]

POULTRY PRODUCERS' UNION, *Respondent*, v. F. C. WILLIAMS et al., *Appellants*.[1]

CORPORATIONS—OFFICERS—REPRESENTATIONS—IMPUTED KNOWLEDGE. Where a report was made to the directors of a corporation that an employee's books were examined by a bookkeeper on a certain day and that the cash deposited exceeded the receipts, the corporation is put upon inquiry and charged with such knowledge as a cursory examination would have revealed, so as to be bound by representations to the contrary made by an officer.

INSURANCE — INDEMNITY — APPLICATION —REPRESENTATIONS—FALSITY. An employer seeking indemnity or fidelity insurance fails to exercise the necessary reasonable care to ascertain the truth of statements made in the application that the employee's books balanced and were correct, where an examination of a part of the books disclosed more cash deposited than received, and an inspection would have disclosed the inaccuracy of the other books.

SAME—WARRANTIES. An employer's statement, in an application for indemnity insurance that the books of the employee whose fidelity was to be insured were examined on a certain day and were found correct with funds on hand to balance, is a warranty of a material fact, the breach of which avoids the insurance policy.

[1]Reported in 107 Pac. 1040.

SAME—REPRESENTATIONS — KNOWLEDGE OF FALSITY — EVIDENCE—SUFFICIENCY. Such a statement is known, or should have been known, to be false, where only the cash books and bank book were examined, and showed that more cash was deposited than had been taken in, and the cash and funds were not examined, and an inspection of all the books would have disclosed their inaccuracy and a misappropriation of cash or merchandise.

REFERENCE—ACCOUNTING—JURY TRIAL. Where a case involves a long and complicated account, it may be sent to a referee to return the facts without there being any denial of the right to jury trial.

Appeal from a judgment of the superior court for King county, Tallman, J., entered August 6, 1909, upon findings of a referee in favor of the plaintiff, after a hearing before the court without a jury, in an action on a fidelity bond. Affirmed in part and reversed in part.

*R. W. McClelland,* for appellant Williams.

*Graves & Murphy* and *Charles H. Winders,* for appellant Surety Company.

*J. H. Allen,* for respondent.

CHADWICK, J.—This is an action to recover on a fidelity bond executed by one F. C. Williams, an employee of the respondent. On August 24, 1907, the Poultry Producers' Union was organized and incorporated, and opened up for business in Seattle, Washington. Williams was employed as an office man and bookkeeper, and had considerable to do with the outside business of the corporation, such as the sale of its corporate stock and the purchase and sale of the produce handled by the concern. On September 11, 1907, the then manager of the concern, R. M. Wardell, retired, and Williams was made secretary-treasurer and manager of the company. In this position a fidelity bond was required, and an application was made and signed by C. H. Severance, president of the company. Among other questions asked and answered were the following:

"13. When were his accounts last examined? A. September 11, '07. 14. Were they at that time in every respect

correct and funds on hand to balance? A. Yes. 15. Is there now or has there been any shortage due you by bondsmen? A. No." ·

The application contained the following stipulation:

"It is agreed that the above answers are to be taken as a condition precedent and as the basis of the said bond applied for or any renewal or continuation of the same that may be issued by the Title Guaranty & Surety Company of Scranton, Pennsylvania, to the undersigned upon the person above named."

A bond was thereupon issued, in which it was also recited:

"If the employee's written statement hereinbefore referred to shall be found in any respect untrue this bond shall be void."

On September 23, just one week later, Williams was shorn of his authority and discharged by the board of directors. This action is brought to recover the amount of his embezzlements. .

We are met at the threshold of the case by the contention of appellants, (a) that the answers in the application were warranties and, being untrue, the policy is avoided; or (b) if they be held to be representations only, they were made by the president he knowing them to be false, so that appellant company was defrauded, and hence cannot be held under the policy. Whether the answers made by the applicant for a policy of indemnity or insurance are warranties or mere representations must depend upon the character of the question and its answer, the opportunity of the insurer to guard against the representation in the light of its consequences, or whether it is material to the risk. A warranty must be strictly true. *Rice v. Fidelity & Deposit Co.*, 103 Fed. 427. A representation need only be substantially true. *Missouri K. & T. Trust Co. v. German Nat. Bank*, 77 Fed. 117.

"The crucial distinction between a representation and a warranty is that the one is not, and the other is, a part of the contract between the parties, and that the truth of the one is not, and the truth of the other is, a condition precedent

to a recovery upon the policy or bond to which they relate."
*Rice v. Fidelity & Deposit Co., supra.*

Measured by these rules, will a court presume that appellant company would have assumed the risk of insuring the employee had the true state of facts been made known to it? It was advised by the president of the respondent that the books had been examined on September 11, and found to be correct; that it was then found that there were cash and credits to balance the accounts. The evidence shows that the president had no personal knowledge of the books and accounts; that, in fact, no examination upon which a conclusive or even an approximate judgment could be based had been had. The only justification for the answers to the questions quoted above was an inspection and casting up of the cash book and bank pass book. This examination was made by N. M. Wardell, a brother of the general manager, at that time. After qualifying himself as an expert bookkeeper, he testified as follows:

"Q. And I will ask you if during that time, and if so, as near the date as you recollect, at the request of your brother, Mr. R. M. Wardell, you examined Mr. Williams' books? A. I examined a portion of them. The cash book, I believe, and the bank book. . . . Q. State from the result of that examination what you reported to your brother Mr. R. M. Wardell, as a result? A. I made simply a verbal report. I just went over them hurriedly. My report to him was that apparently all money received had been properly deposited, even showing a little more money deposited than had been received. Q. In order to ascertain that what did you do? A. I simply ran up the cash receipts and the bank deposits. Q. The cash disbursements? A. Yes, sir. . . . Q. Were these the only two books in your possession? A. That is all. Q. Did you ascertain how much cash there was in the safe? A. No. Q. Did you ascertain whether there were notes and securities in the possession of the defendant Williams? A. No, I did not. Q. All you did then was to foot up the cash book and bank book and they disclosed to you that there was more money deposited in the bank than appeared to have been taken in? A. That is my recollection of my report to

my brother, that all money had been accounted for in the bank and even a little more. . . . Q. Did you at that time report the incompetency of Mr. Williams? A. I think I talked the fact over with my brother that it was pretty poor bookkeeping when there was more money deposited than the books showed they received. I know it was talked over, the fact that it was a case of incompetent bookkeeping there somewhere."

The cash books did not balance, and an inspection by one at all acquainted with bookkeeping would have revealed the fact that the ledger did not disclose an accurate account of the business. Of the ledger, the bookkeeper (employed at the time Williams became general manager) said: "When I took charge of it it was in such shape I could hardly do anything with it." Williams admits that he is not an expert bookkeeper, and that it was impossible to take care of the books and do the outside work that was put upon him. The reports of two public accountants are found in the record, and they agree that the books are incomplete and inaccurate, one of them saying: "It is easy to see that there was wholesale robbery of cash or merchandise, or both."

It has been held that, in view of that section of our code (Rem. & Bal. Code, § 3686), declaring that the management of a corporation shall be vested in a board of trustees, knowledge on the part of a single officer of facts affecting the risk is not imputable to the corporation, in the absence of proof that it had been brought home to the board. *American Bonding Co. v. Spokane Building & Loan Society*, 130 Fed. 737. But such knowledge as R. M. Wardell had was communicated to the board.

"Q. You reported to the board then at this meeting that apparently more money had been deposited in the bank than was taken in? A. I reported that there were no checks as far as bookkeeping was concerned and urged that we have a competent bookkeeper. Williams said he didn't have time and I guess he didn't have if he had the ability to keep the books properly; but the cash book showed that apparently Williams was perfectly straight."

It is made plainly to appear that there was enough to excite inquiry and to charge respondent with the duty of ascertaining the true state of the books, before making a statement that on a certain date they were found to be correct and that cash and securities were on hand to balance them.    It is the duty of an employer seeking indemnity insurance to use ordinary care to ascertain the truth of his statements before making them.    *United States Fidelity & Guaranty Co. v. Blackly, Hurst & Co.*, 25 Ky. Law 1271, 77 S. W. 709; *Model Mill Co. v. Fidelity & Deposit Co.*, 1 Tenn. Ch. App. 365. And while he is not to be charged with a knowledge which could only be discovered by an expert (*Remington v. Fidelity Deposit Co.*, 27 Wash. 429, 67 Pac. 989), he is nevertheless charged with such knowledge as a cursory examination would have revealed.    *Carstairs v. American Bonding & Trust Co.*, 112 Fed. 620; *Id.*, 116 Fed. 449. For, as was said in the *Remington* case: "Respondent should not be required, against its will, to insure against dishonest employees who are known to be such."    It has been held in the following cases that a statement as to the correctness of the employee's accounts is a material statement which, if false, avoids the policy, although made in good faith.    *Sullivan v. Fraternal Societies' etc. Union*, 36 Misc. Rep. 578, 73 N. Y. Supp. 1094; *Guarantee Co. of North America v. First Nat. Bank*, 95 Va. 480.

In the latter case the answer alleged that the company was induced to execute the bond upon the representation in writing, made on behalf of the bank by its cashier, that the teller, for whom the bond was sought, was never in arrears or default, and that his books had been examined on December 31, 1903, and found to be correct.    The following conclusion of law was drawn by the court:

"These alleged representations were of existing facts, were material and presumably within the peculiar knowledge of the bank and its officers, and constituted an inducement to the Guarantee Company, on which it had the right to rely, to execute the bond.    It was immaterial whether the plaintiff

knew that they were false, or honestly believed them to be true. If a party innocently misrepresent a material fact by mistake, the effect is the same on the party who is misled by it as if he who innocently makes the misrepresentation knew it to be positively false. The real question in such a case is not what the party making the representation knew or believed, but was the representation false, and the other party misled by it. *Lynchburg Fire Ins. Co. v. West*, 76 Va. 575; *Grim v. Byrd*, 32 Gratt. 293; *Max Meadows Land & Imp. Co. v. Brady*, 92 Va. 77; and *Wilson v. Carpenter*, 91 Va. 183."

No authority is cited by respondent or argument made to meet this proposition, other than to say:

"We submit the object of examining his accounts was simply to ascertain if he had accounted for the money received, and that only two of his books could throw any light on that subject, that is, his cash book, Exhibit 'A,' which is in evidence, which shows or attempts to show all the cash received, and all the cash paid out. For what the cash was received, and for what it was paid out, and the balance of the cash on hand. . The bank book shows that all of this cash on hand had been deposited in the bank to the credit of the Poultry Producers' Union;"

predicating, as will be seen, a justification for the declaration that the books had been found correct upon the proposition that, if the books show cash "long" they were all right, whereas if they had revealed a shortage the representation might be fatal to the right of recovery.

Bookkeeping is an exact science, and a showing that the books do not balance, whether the cash be long or short, should have been enough to awaken the energies of the officers of respondent to find the error, rather than to console themselves with the notion that, if there was an error, it was in their favor and an indication of honesty. Honesty does not require of any man that he turn to the credit of his employer more than is Caesar's. If he makes his accounts to so appear, it behooves the employer to take notice, for if the employee is not taking that which belongs to the employer, he must be taking from the customer more than is the employer's

due. It is unsafe to employ one who will do either. We hold that the representation that the books were examined and found to balance was a warranty of a material fact; that it was known, or should have been known, by the respondent that the representation was false, and that without it appellant would not have assumed the risk.

Judgment was entered against both defendants, and both of them appealed. The surety company being disposed of, the assignments of error which we shall now discuss pertain only to defendant Williams. It is urged that the court was without jurisdiction to refer the case; that by so doing defendant was deprived of his right of trial by jury. It is unnecessary to discuss this assignment. We have only recently held that, where a case involves the examination of a long or complicated account, the case may be sent to a referee to return the facts. Under the statute it is a matter of discretion with the trial judge. *Lindley v. McGlauflin*, 57 Wash. 581, 107 Pac. 355.

The other assignments go to the question whether the testimony sustains the judgment. It may be that the sum charged to Williams is not the exact amount of his shortage, but it is probably as near to it as can be ascertained by any agency, human or divine. The condition of the business was the result of Williams' negligent bookkeeping or positive defalcation, and the injured party should not be held to prove its case beyond the peradventure of a doubt. The amount is approximately correct, and we are disposed to follow the conclusions of the referee and the trial judge upon this question of fact.

The judgment will be reversed in so far as the Title Guaranty & Surety Company is concerned, with instructions to dismiss the case. As to Williams the judgment is affirmed.

RUDKIN, C. J., GOSE, MORRIS, and FULLERTON, JJ., concur.