HUNTER *et al. v.* UNITED STATES FIDELITY & GUARANTY
Co.*

(*Jackson.* April Term, 1914.)

1. INSURANCE.    Employers' Indemnity Insurance.    Contracts.
Construction.

A "continuation certificate" made by the president of a bank to
a guaranty company in contemplation of the renewal of a fidelity
bond, indemnifling it against losses due to the fraud or dis-
honesty of its cashier, certified that the books of the cashier
"were examined from time to time in the regular course of busi-
ness and found correct in every respect, all moneys or property
in his control or custody being accounted for with proper se-
curities and funds on hand to balance his accounts, and he is
not now in default."  *Held,* that the certificate was not a war-
ranty of the correctness of such accounts, but merely that exam-
inations were made as represented, and no errors or falsifica-
tions were discovered; the phrase "and he is not now in default,"
not being a substantive and distinct warranty, independent of
the preceding language, but only expressing the result of the
examinations.    (*Post, pp.* 578-580.)

Cases cited and approved:  First National Bank v. Fidelity &
Guaranty Co., 110 Tenn., 10; United States Fidelity & Guaranty
Co. v. Citizens' Bank (Ky.), 143 S. W., 997; American Bonding
Co. v. Spokane Building & Loan Soc., 130 Fed., 737; Title
Guaranty & Surety Co. v. Bank of Fulton, 89 Ark., 471; Rem-
ington v. Fidelity & Deposit Co., 27 Wash., 429.

2. INSURANCE.    Employers' liability insurance.    Question for
jury.

In an action by a bank against a guaranty company upon a fidelity
bond indemnifying it against loss due to the fraud or dishonesty

*As to the construction of a bond or policy indemnifying em-
ployer against loss from negligence of employee, see note in 31
L. R. A. (N. S.), 775.  And on the question whether employers'
indemnity contract constitutes insurance, see note in 47 L. R. A.
(N. S.), 294.

of its cashier, *held*, a question for the jury whether the bank had in good faith made reasonable examinations of the books and accounts of the cashier as required by the contract with the guaranty company. (*Post, p.* 580.)

3. INSURANCE.   Employers' indemnity insurance.   Contracts. Construction.

A fidelity bond indemnifying an employer against loss due to the dishonesty of an employee is to be construed as an insurance contract and, in cases of doubt, against the insurer. (*Post, pp.* 580, 581.)

Cases cited and approved:   Railroad v. Fidelity & Guaranty Co., 125 Tenn., 690; Insurance Co. v. Dobbins, 114 Tenn., 239; Royal Ins. Co. v. Vanderbilt Ins. Co., 102 Tenn., 264.

4. INSURANCE.   Employers' indemnity insurance.   Contracts. Construction.

Words and phrases in an employers' fidelity bond are to be construed according to their context. (*Post, pp.* 581-584.)

Case cited and approved:   Winkler Brokerage Co. v. Fidelity & Deposit Co., 119 La., 735.

5. INSURANCE.   Policy.   Construction.   Warranties.

Warranties by the insured are not favored by construction. (*Post, p.* 584.)

---

FROM SHELBY

---

Appeal from Chancery Court of Shelby County.—J. P. YOUNG, Judge.

JULIAN C. WILSON and W. P. ARMSTRONG, for Hunter.

R. P. CARY and WM. HALL, for United States Fidelity & Guaranty Co.

MR. JUSTICE GREEN delivered the opinion of the Court.

. This bill was brought by the receivers of the Bank of Collierville to recover from the defendant guaranty company $25,000, the penalty of a certain fidelity bond executed by the company to cover losses to the bank occasioned by reason of fraud or dishonesty of the bank's cashier, L. T. Ward.

The Bank of Collierville was placed in the hands of a receiver as an insolvent institution, and the defalcation of Ward upon investigation turned out to be about $38,000. Premiums had been duly paid on this bond, notice was regularly given, and the facts concerning Ward's default are not in dispute. The controversy here arises upon certain language of the bond, the application therefor, and an employer's certificate, upon which a renewal of the bond was had. The case depends for decision upon a proper construction of the several instruments.

In April, 1904, the bond in question was issued by the guaranty company to the bank in the penalty stated, upon a written application of the employer in which certain representations were made respecting Ward and his employment.

Referring first to the material statements in the application for the bond, we find the following:

"11. To whom and how frequently will he account for his handlings of funds and securities?

"A. Twice a year, our auditing committee.

"12. (a) What means will you use to ascertain whether his accounts are correct?

"A. Audit.

"(b) How frequently will they be examined?

"A. Twice a year.

In the face of the bond occurs this paragraph:

"Whereas the employer has heretofore delivered to the company certain representations and promises relative to the duties and accounts of the employee and other matters, it is hereby understood and agreed that those representations and such promises, and any subsequent representation or promise of the employer hereafter required by or lodged with the company, shall constitute part of the basis and consideration of the contract hereinafter expressed."

This bond, executed by the guaranty company, as aforesaid, was renewed each year from the date of its issuance, May 1, 1904, until May 1, 1912, inclusive. Each renewal was to cover a period of twelve months from date. Ward was first ascertained to be a defaulter in the fall of 1912.

The guaranty company tendered to the receivers and subsequently paid into court the amount of Ward's shortages, ascertained to have occurred prior to May 1, 1910. The company, however, claimed to be released from liability for Ward's defaults after that date by reason of a certain certificate made by the bank to procure the 1910 renewal.

Prior to the 1910 renewal, Ward was advised by the general agent of the guaranty company that it

would be necessary for him to procure what was called a "continuation certificate" from the bank before this bond would be renewed for the ensuing year. A certificate was sent to Ward to be executed by his employer. The bank did execute it through its president, J. M. Glenn, and, upon such execution and return of the certificate, the bond was continued for another year. This certificate was in the following language:

"This is to certify that the books and accounts of Mr. L. T. Ward were examined by us from time to time in the regular course of business, and we found them correct in every respect, all moneys or property in his control or custody being accounted for with proper securities and funds on hand to balance his accounts, and he is not now in default. He has performed his duties in an acceptable and satisfactory manner, and no change has occurred in the terms or conditions of his employment as specified by us when the bond was executed.

"Dated Collierville, this 2d day of May, 1910.
"Signature of employer:
"Bank of Collierville.
"By J. M. GLENN, Pres't [Official Capacity]."

In its answer to the bill of the receivers, the guaranty company admitted all the facts stated in the bill, but averred that this certificate sent to it for the 1910 renewal was a false representation of facts material to the risk; that Ward was in default at that time; and that it continued the bond for that year and subsequent years on the faith of this certificate,

and was accordingly released from liability on account of the obligation it had thus been induced to assume.

A jury was demanded by the complainants, and certain issues framed by them were tendered for submission. These issues were:

"(1)  Was the United States Fidelity & Guaranty Company induced to make the renewal of its bond, which renewal was dated April 1, 1910, by any substantial misrepresentation of facts, and which facts were material to the risk then assumed or continued by the United States Fidelity & Guaranty Company?

"(2)  Did the Bank of Collierville fail, through its officers and directors, to use ordinary diligence and prudence in making in its regular course of business its examinations of the books and accounts of Mr. L. T. Ward, its cashier?"

After hearing the proof, the chancellor declined to submit either of these issues to the jury, and submitted to the jury only one issue which was tendered by the defendant as follows:

"Did J. M. Glenn, as president of the Bank of Collierville, sign the original employer's certificate dated May 2, 1910?"

There being no controversy upon the latter issue, the chancellor directed the jury to answer it in the affirmative, and thereupon rendered a decree in favor of the defendant, from which the complainants have appealed to this court.

It is virtually conceded by the learned counsel for the defendant that the submission of the second issue tendered by complainants would have been proper had not the certificate contained the phrase, referring to Ward, "and he is not now in default."

Leaving out of consideration the phrase above quoted, this certificate is a statement that the books and accounts of Ward were examined in the regular course of business and found correct. The words "all moneys or property in his control or custody being accounted for with proper securities and funds on hand to balance his accounts" constitute a parenthetical clause, qualifying and explaining the language previously used. They indicate the manner in which the books and accounts were found correct.

A certificate that books and accounts have been examined and found correct by an examining committee of a bank is not to be taken as a warranty of the absolute verity of said books and accounts. Such a statement merely means that an examination has been made as represented, and that no errors or falsifications have been discovered.

The supreme court of the United States has lately considered, in a similar case, the effect of a certificate such as this, and disposes of the matter thus:

"Finally it is said that the greater part of the loss occurred during the currency of renewal bonds, and that each renewal was made upon a certificate by the employer, which stated that just prior thereto the books and accounts of the employee 'were examined

and found correct in every respect and all moneys
accounted for.' It is said that this statement was un-
true inasmuch as, at the date of such renewals, the
books and accounts were not correct and the cashier
was short in his cash. But the certificate was not to
be taken as a warranty of the correctness of the ac-
counts. The statement is that his books and accounts
had been examined and found correct. The mere fact
that the examination, if made by a reasonably com-
petent person, failed to discover discrepancies cov-
ered up by false entries or other bookkeeping devices
would not defeat the renewal. The case upon this
point went to the jury upon the fact of reasonable
examinations and the good faith of the bank in making
the representation. The question of the weight or
credibility of the evidence is not one for our consider-
ation. There was evidence which the trial judge
thought sufficient to carry the case to the jury. The
supreme court of Arizona agreed with the trial court,
and with both courts we concur." *Title Guaranty Co.
v. Nicholls*, 234 U. S., 346, 32 Sup. Ct., 475, 56 L. Ed.,
795.

The foregoing observations of the supreme court
of the United States are in line with the current of
modern authority, and with our own case of *First Na-
tional Bank* v. *Fidelity & Guaranty Co.*, 110 Tenn., 10,
75 S. W., 1076, 100 Am. St. Rep., 765. See, also, *United
States Fidelity & Guaranty Co.* v. *Citizens' Bank*
(Ky.), 143 S. W., 977; *American Bonding Co.* v. *Spo-
kane Building & Loan Soc.*, 130 Fed., 737, 65 C. C.

A., 121; *Title Guaranty & Surety Co.* v. *Bank of Fulton,* 89 Ark., 471, 117 S. W., 537, 33 L. R. A. (N. S.), 676; *Remington* v. *Fidelity & Deposit Co.,* 27 Wash., 429, 67 Pac., 989.

In this case, there is evidence tending to show that Ward's books and accounts were examined by the auditing committee twice a year, prior to the issuance of the certificate in question, in the regular course of business, as was represented in the application for the bond would be done. While a different character of examination would have disclosed the shortages, the legal sufficiency of the examinations made depended upon the good faith and care of the auditing committee. Evidence was offered tending to show that said examinations were made with reasonable care, in the manner customary in such banks, and in good faith, without the discovery of any shortage.

So, leaving out of consideration the phrase "and he is not now in default," the receivers were entitled to have their case submitted to the jury upon the fact of reasonable examinations and good faith of the bank.

Does the addition of the words "and he is not now in default" to this certificate change its character and call for the application of a different test with respect to defendant's liability?

It is contended in behalf of the guaranty company that the language "he is not now in default" is to be considered as a substantive representation, independent of the preceding language. It is argued that by

these words the employer undertook to state a detached fact, or exact condition, and did not undertake by this language to state a conclusion drawn from foregoing statements made. As a matter of course, the representation that Ward was not in default was material to the risk, and had it been knowingly made, in another connection, if false, the bond would have been avoided. It is well settled that a bond of this character is to be construed as an insurance contract, and its language, carefully considered and prepared by the company, in all cases of doubt, is to be construed against the company. *Railroad* v. *Fidelity & Guaranty Co.*, 125 Tenn., 690, 148 S. W., 671; *Insurance Co.* v. *Dobbins*, 114 Tenn., 239, 86 S. W., 383; *Royal Ins. Co.* v. *Vanderbilt Ins. Co.*, 102 Tenn., 264, 52 S. W., 168.

Words and phrases are to be construed according to their context. The whole of the preceding part of this certificate constitutes a mere statement that investigations of Ward's books and accounts have been made and these books and accounts found correct.

We do not think that a new and distinct warranty can be incorporated into this certificate lawfully by the use of a conjunction and a few words of general import in this sort of connection. Fairly construed, the concluding phrase must be restricted to conform to the dominant meaning of the whole passage. The words "and he is not now in default," naturally interpreted, appear only to express the result of the

investigations, which the certificate avouches to have been made.

If the guaranty company had intended to require the bank, as a condition precedent to the renewal of this bond, to warrant that Ward was not in default, good faith would have required a less equivocal method. Had a separate paragraph been incorporated in this certificate, and the bank officers therein required to warrant the *status* of Ward's accounts, the case would have been different. Inserted into the certificate in this manner, if construed as defendant insists, the words in controversy would be most deceptive.

The apparent meaning of this certificate is that examinations made in the usual course of business, in good faith, and with ordinary care, have disclosed no derelictions on the part of the employee. Almost in its entirety, the certificate has been so interpreted by the courts. Having collected from the whole certificate its seeming purpose, general words therein must be restrained so as to effectuate that purpose. If the defendant wishes to obtain an additional guaranty, and to have an absolute warranty that the employee is not in default prior to the issuance or renewal of its bonds, language must be used less susceptible of misinterpretation. Fair dealing demands that the attention of the employer be distinctly directed thereto, if it is expected to charge him with such an unusual and sweeping warranty. Such a warranty cannot be made effective when disguised and

obscured by its context.  It will not be countenanced, if it is masked.

We are of opinion that this whole certificate must be construed to mean that examinations of the employee's books and accounts were made in the regular course of business, in the manner indicated by the parenthetical clause, and said books and accounts were found to be correct and, from such examinations, the employer concludes and represents, as a result thereof, that the employee is not in default.  So if it appears that the examinations were conducted in good faith, and with reasonable care, the mere fact that such examination failed to disclose the default will not defeat the bond.  This certificate does not amount to an unqualified statement that no default exists, but is rather that none was found to exist.

*Winkler Brokerage Co.* v. *Fidelity & Deposit Co.*, 119 La., 735, 44 South., 449, is not in conflict with the views we have here expressed.  The employer's certificate in the *Winkler Brokerage Company Case* did not purport to represent conditions as they were found, but represented conditions as they actually were.  In that case it was certified that the employee had punctually accounted, and had always had proper securities, and was not now in default.  The employer did not undertake to state what had been found or discovered from examination, but stated without qualification matters of fact.  As said by the supreme court of Louisiana, there "was not a question of supposi-

tion or belief to which it was asked to certify, but a matter of fact.''

The difference between the two employer's certificates is plain enough.

The construction we have given this employer's certificate is fully justified by well-settled rules for the interpretation of legislative acts, written contracts, and insurance policies. Lewis' Sutherland Statutory Construction, sec. 347; Page on Contracts, secs. 1112-1113; Joyce on Insurance, sec. 1949.

Warranties are not favored by construction. Joyce on Insurance, sec. 1949; 19 Cyc. 684.

It results that the second issue tendered by the complainants should have been submitted to the jury.

Regarding complainants' first issue, inasmuch as the whole defense was based on the certificate, there was really no occasion to submit a question of material misrepresentations to the jury. The representations in this certificate are undoubtedly material. They are expressly made so by the contract of the parties. In so far as the first issue included a submission of the truth of the representations, it should have gone to the jury. We have undertaken in this opinion to explain the meaning of the representations embodied in this employer's certificate. Whether they were made in good faith is a vital question of fact in the case.

From what has been said heretofore, it is obvious that the chancellor was in error in submitting to the jury, as the only issue in the case, the issue tendered by the defendant as to whether the bank through its

president, as a matter of fact, executed the renewal certificate. The third, fourth, and fifth assignments of error are accordingly sustained.

In view of the disposition made of the case, it is not necessary to comment on the sixth, ninth, and tenth assignments.

After full consideration, we overrule the seventh and eighth assignments of error.

The decree of the chancellor will be reversed, and the cause remanded for another trial. Defendant will pay the costs of this court.