No. 31,136

JOE GIACOMA, *Appellee,* v. BANKERS INDEMNITY INSURANCE COMPANY, *Appellant.*

(25 P. 2d 362.)

Opinion filed October 7, 1933.

*D. G. Smith,* of Girard, for the appellant.

*Thomas D. Winter,* of Girard, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on a health and accident insurance policy. Judgment was for plaintiff. Defendant appeals.

The plaintiff made application for the policy in writing. Among the questions asked him were the following:

"Are your habits of life correct and temperate and are you in sound condition mentally and physically? Yes. Is your hearing or vision impaired and have you any infirmity, deformity or defect? No. Have you ever had fits of any kind, vertigo, hernia, paralysis, tuberculosis, or any form of heart trouble or kidney disease? No. Have you in contemplation any special journey or hazardous undertaking? No.

"Have you been disabled by either accident or illness, or received medical or surgical attention during the last five years? Yes. If so, when, for what and duration? In August, 1929, for mashed thumb lasting fourteen days.

"Have you ever had or been advised to have a surgical operation? No."

Plaintiff was injured by being hit by an automobile while getting ready to change a tire on his car.

On the trial the evidence of plaintiff showed the application, the issuance of the policy and the injury. In addition it was shown that within four or five months prior to date of issuance of the policy plaintiff was confined for a period of two weeks in a hospital, where he had a surgical operation by which the first and part of the

second phalanges of his thumb and finger were amputated; that he drew compensation for such disability; that from December 27, 1929, to December 30, 1929, plaintiff was confined in the hospital for treatment of a sinus infection; that at that time plaintiff was brought to the hospital in an ambulance and was in great pain and in a serious condition; that plaintiff had had this trouble for about a year before the policy was issued, and that within a few weeks prior to the granting of the policy he had been treated for miner's knee; and that during the five years prior to making the application he had been treated by various doctors.

Among other questions answered by plaintiff when he applied for the policy was the following:

"Do you understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any of the foregoing statements, material either to the acceptance of the risk or to the hazard assumed by the company, is false [or in the event that any one of the foregoing statements is false], and made with intent to deceive, that the insurance hereby applied for will not be in force until the policy is actually issued and that the company is not bound by any knowledge of or statements made by or to any agent unless written hereon, and that you will pay the monthly premium of two and 90/100 dollars in advance without notice? Answer: Yes."

At the close of the plaintiff's case defendant demurred to the evidence of plaintiff. This demurrer was overruled.

After hearing all the evidence the trial court made the following findings which are of interest to us:

"1. The court finds that during September, 1929, plaintiff was in the Girard hospital for a period of two weeks for a surgical operation resulting from an injury in a mine accident, which operation consisted of removing a portion of plaintiff's thumb, a portion of one finger, and minor cuts on plaintiff's hand.

"2. The court finds that plaintiff was admitted to the Girard hospital on December 27, 1929, and remained in said hospital until the evening of December 30, 1929, suffering from a sinus infection and was treated medically therefor.

"3. The court finds that on and following December 8, 1930, plaintiff was treated by Dr. C. M. Gibson, of Pittsburg, Kan., for an infection in the frontal sinus, or sinusitis, and that on January 10, 1931, Doctor Gibson performed an operation upon the plaintiff removing said trouble."

The conclusions of law were:

"1. That the answers made in plaintiff's application for insurance, in omitting the matter referred to in finding No. 2 herein, and in reference to the injury to the hand referred to in finding No. 1 hereof, were matters of omission and not of misrepresentation, and did not materially affect either the acceptance of the risk or the hazard assumed by the insurer.

"2. That plaintiff be awarded judgment against defendant for the sum of $250 as monthly indemnity for the period of five months from January 15, 1931, to June 15, 1931, at $50 per month, with interest at the rate of six per cent per annum from date of judgment."

The argument of defendant is that the answers to the questions were false; that they were warranties and hence voided the policy.

Plaintiff relies upon R. S. 1931 Supp. 40-1109, subdiv. (f). That paragraph is as follows:

"(f) The falsity of any statement in the application for any policy covered by this section shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive, or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Admitting, for the moment, that this section applies to a policy of this kind, we are not prepared to say the answers to the questions by plaintiff did not materially affect the acceptance of the risk. It is well known that sinus trouble may cause an ordinary injury which would be expected to result in only slight disability, to have a much more harmful effect. This is on account of the danger from focal infection.

The effect of questions and answers such as these was discussed in *Poultry Producers Union v. Williams,* 58 Wash. 64, 107 Pac. 1040. In that case the court said:

"Whether the answers made by the applicant for a policy of indemnity or insurance are warranties or mere representations must depend upon the character of the question and its answer, the opportunity of the insurer to guard against the representation in the light of its consequences, or whether it is material to the risk. A warranty must be strictly true. *Rice v. Fidelity & Deposit Co.,* 103 Fed. 427. A representation need only be substantially true. *Missouri, K. & T. Trust Co. v. German Nat. Bank,* 77 Fed. 117." (p. 66.)

It would be difficult to describe a case where the above rule would apply any better than to the case under consideration. We must either conclude that such questions are asked of an applicant for insurance just as a gesture or that it is the intention to make the questions and answers a part of the contract.

It will be noted that one of the conclusions of law in this case was that the statements referred to were matters of omission and not of misrepresentation, and did not materially affect either the acceptance of the risk or the hazard assumed by the insurer. This conclusion is well answered by the language of the court in *Ins. Co. v. Box Co.,* 185 N. C. 543, 117 S. E. 785. In that case the insured

had answered falsely as to his having had Spanish influenza and having spit up blood. The action was one to set aside the contract. The statute was as follows:

"All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy." (p. 546.)

The court said:

"It is very generally recognized that the spitting of blood always is regarded as a serious symptom and not infrequently indicates the presence or near threat of tuberculosis (the disease of which intestate died), and that Spanish influenza has a tendency, at least for a period following the disease, to weaken the resisting powers of a patient and render him more likely to succumb to an attack of serious illness." (p. 546.)

The injury of which plaintiff complains is that the blow from the car caused both his legs to be paralyzed. There was evidence that one leg recovered, but the other leg was still partially paralyzed at the time of the trial.

Two doctors testified for the plaintiff as to the extent of his injuries. Their testimony was that the condition was caused by an injury to the sciatic nerve. On cross-examination they both testified that this condition might be caused by a blow, or might be caused by some focal infection in the body, such as bad tonsils, decayed teeth or sinus trouble. They testified that if the patient was suffering with sinus trouble a short time before the blow occurred they could not be satisfied as to whether the condition observed was caused by the blow or by the sinus infection. Three doctors were called by the defendant and testified to the condition of plaintiff. Their testimony was that plaintiff was suffering from sciatica, and that this condition could have been caused by focal infection from sinus trouble. This evidence is borne out by medical authorities. See Conquering Arthritis, by Margolis, pp. 60, 76; also, Infectious Immunity and Biologic Therapy, by Kolmer, 3d ed., p. 1038.

We are not called upon to decide whether these doctors and medical authorities are correct. The point here is whether plaintiff's failure to state the truth as to the sinus trouble materially affected the acceptance of the risk or the hazard assumed by the defendant.

The court held as a matter of law that the false statements with reference to the sinus trouble did not affect either the acceptance of

the risk or the hazard assumed by the insurer. This amounts to a holding as a matter of law that the company would not have been affected in its decision to accept plaintiff as a risk by the knowledge he had been afflicted with sinus trouble a short time previously, and notwithstanding the general belief among reputable doctors that sinus trouble may be the means of causing serious injury. To state this proposition is to refute it.

We have concluded that the trial court was in error on this point.

The judgment of the district court is reversed with directions to enter judgment for the defendant.