HUNT v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

No. 4.

1. INSURANCE—WARRANTY.
    Provisions, in a contract of insurance against loss through embezzlement by assured's agent, that assured will make monthly comparison and verification of cash in agent's hands with his accounts and vouchers, is a warranty.

2. SAME—QUALIFICATION.
    Declaration that the answers in an application for insurance against embezzlement by agent are true, "to the best of the knowledge and belief" of assured, does not qualify the effect of the answer that assured will make monthly comparison and verification of cash in agent's hands with his accounts and vouchers.

3. SAME—FULFILLMENT OF WARRANTY.
    Promise of assured to make monthly comparison of money in its agent's hands with his accounts and vouchers is not fulfilled by a monthly comparison of the checks sent it by him by the accounts and vouchers sent by him two months before.

4. CUSTOM—QUALIFYING CONTRACT.

 Where a written contract of insurance against loss by embezzlement of assured's agent contained a plain provision for monthly comparison of money in agent's hands with his accounts and vouchers, it cannot be shown that it is not the custom of companies engaged in the same business as assured to go to an agent's office and examine his accounts, bank book, and cash, but that it was customary to examine his statements and vouchers, and compare them with his remittances.

In Error to the Circuit Court of the United States for the Southern District of New York.

Jonathan C. Ross, for plaintiff in error.

Chas. C. Nadal, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. Upon the trial of this action the court directed a verdict for the defendant. The assignments of error challenge the correctness of this ruling.

The action was brought upon a policy of insurance issued by the defendant to the People's Fire Insurance Company of Manchester, N. H., to indemnify the latter against any loss that might occur through the embezzlement of one Kingman, its general agent in the city of New York. The policy was issued upon a declaration, signed by the assured, containing statements in the form of answers to questions relative to the subject-matter of the policy. The statements were, by the terms of the policy, to "constitute an essential part and form a basis of the contract." The declaration also stated that the answers were true, to the best of the knowledge and belief of the assured, and were to be taken as the basis of the contract between the insurer and the assured. Among the statements in respect to the mode of doing business between the agent and the assured were the following:

 "Question. How will moneys reach his hands? Answer. Paid to him in the course of business for transmission to the company.

 "Question. State largest sum which may be held at any one time. Answer. Two months' premiums.

 "Question. To whom does he pay moneys received? Answer. To the company or to its representative.

 "Question. How often will moneys be deposited in bank? Answer. As collected.

 "Question. By whom will they be drawn out? Answer. By him for transmission as stated.

 "Question. How often and by whom will cash be compared and verified with accounts and vouchers? Answer. Monthly."

Among the defenses interposed by the answer of the defendant, it was alleged that the first and last of the foregoing statements were false and untrue, and that the promises and agreements thereby made by the assured were not fulfilled.

It was proved upon the trial that during the period of the insurance Kingman kept at the office of the assured, at New York City, accounts of the business done by him as its agent, showing the policies issued and the moneys collected and paid out by him, and deposited from time to time the moneys collected to his credit in the St. Nicholas Bank of New York; that, in accordance with instruc-

tions, he sent to the assured regularly, from day to day, a statement of the policies issued by him; that he sent to the assured regularly, on or about the 1st day of the month, what purported to be a statement of the premiums on policies issued by him during the preceding month, together with vouchers for all expenditures shown on such statement to have been made by him; that at the end of two months thereafter he sent to the assured regularly a check for the balance shown by such statement to be due from him; that each month this check was compared and verified by the assured in its offices at Manchester with the statement and vouchers, and this was done monthly, during the period of said policy; that during said period the agent retained in his hands, for 60 days from the date of each month's statement, all moneys collected between the 1st day of the month for which the statement was made and the end of such 60 days, on business embraced in such statement; and that during the period of the insurance the assured did not at any time compare and verify the cash in its agent's hands, or his bank balance, with the accounts and vouchers kept by him at the office in the city of New York. It was further proved that during the period of the insurance Kingman died, and, upon an examination of his books, accounts, records, and vouchers, it was found that there was a deficiency in his accounts, and that he had collected and converted to his own use the moneys of the assured.

The court below directed a verdict for the defendant, upon the ground that it was established that there had been no monthly examination by the assured of the cash and accounts of its agent, in compliance with the promise of the assured.

Reading the several statements of the assured together, it is plain that the statement that the cash would be compared and verified monthly with accounts and vouchers meant that the assured would monthly examine the accounts and vouchers of its agent, and compare and verify them with the cash in his hands, in order to ascertain the correctness of his accounts. Such an examination would have shown what he had received by way of premiums, what he had disbursed by way of expenses, what he had transmitted to his principal, and how the balance compared with his moneys on hand. A monthly verification of that character would tend to exercise a salutary check upon the transactions of the agent in dealing with the funds of his employer, and might prevent, as well as reveal, any irregularities or dishonest manipulation on his part. It would to some extent, at least, have been a safeguard to the employer and to the insurer, who was to become responsible for any defalcation of the agent. Corporations engaged, like the assured, in the business of fire insurance, generally conduct their business in different states through local agents, under the supervision of a general agent. It would seem to be the meaning of the statement that the office of the New York agent of the assured, an office located in the most important business center of the country, should be subjected to this supervision for the purpose of verifying his accounts. But, if this is not its meaning, it is, at all events, a promise that either at the New York office, or at its general office, or at some other place,

the assured would attempt to make a monthly examination, in order to ascertain whether the cash in its agent's hands corresponded with the balance which should be there, according to his accounts. The promissory statement, having been made part of the contract between the parties, by the terms both of the policy and the declaration, was, in effect, a warranty, which the assured was bound to fulfill in substance and according to its meaning. Jeffries v. Insurance Co., 22 Wall. 53, 22 L. Ed. 833; Insurance Co. v. France, 91 U. S. 513, 23 L. Ed. 401; Brady v. Association, 9 C. C. A. 252, 60 Fed. 727; Missouri, K. & T. Trust Co. v. German Nat. Bank, 23 C. C. A. 65, 77 Fed. 117. It is quite immaterial that the statement is not called a warranty. It is a stipulation embodied in the contract, by the words of the policy, for the performance of future acts, and, as such, is an express warranty. Am. Ins. (6th Ed.) 599; Ang. Ins. §§ 140, 141. Undoubtedly, the language in the declaration that the answers were true, "to the best of the knowledge and belief" of the assured, qualifies the effect of several of the warranties, restraining them to a breach of such representations as were not honestly made by the assured. Several of the statements were in respect to facts existing at the time or previously. As to those the assured did not stipulate unconditionally. But the language has no reference to the warranties for the performance of subsequent acts, because, as applied to them, it would be meaningless.

It appeared beyond question upon the trial that its promise to examine its agent's cash monthly had not been fulfilled by the assured. The monthly comparison of the checks sent to it by its agent with the accounts and vouchers sent by him two months previously was not a comparison of the cash in his hands with his receipts and disbursements, but was merely a comparison of a part of it,—the part which he had transmitted. It did not involve any examination of his accounts in order to ascertain whether his cash on hand corresponded with the premiums received within the last two months. No attempt was made to ascertain this by the assured. What was done was of no value in comparing the cash actually in the agent's hands with the amount which he ought to have on hand at that time. In ruling that the promise of the assured had not been fulfilled, and that the defendant was therefore entitled to a verdict, the court below was clearly correct.

Error is also assigned of the refusal of the court to admit evidence offered by the plaintiff upon the trial to show that it was not the custom of insurance companies to go to an agent's office and examine his accounts, bank book, and cash on hand, but that it was customary to examine the statements of business done, and the vouchers sent by the agent to the home office, and compare and verify them with his remittances. Where a written contract is susceptible on its face of a plain and unequivocal interpretation, resort cannot be had to evidence of custom and usage to explain its language or qualify its meaning. Barnard v. Kellogg, 10 Wall. 383, 19 L. Ed. 987; Bigelow v. Legg, 102 N. Y. 653, 6 N. E. 107. To use the language of the supreme court in Insurance Co. v. Wright, 1 Wall. 471, 17 L. Ed. 505: "When we have satisfied ourselves that

the policy is susceptible of a reasonable construction, on its face, without the necessity of resorting to extrinsic aid, we have at the same time established that usage and custom cannot be resorted to for that purpose." The effect of the evidence offered would have been to transmute an agreement to compare at stated times the cash in an agent's hands with his vouchers and accounts into one to compare his statements with the remittances he has made to his principal. If the evidence had been received, it would not have helped the case for the plaintiff, because, upon the conceded facts, there was no attempt by the assured to verify, by the statements, vouchers, and checks, the cash in the agent's hands represented by the two-months premiums there intermediate the sending of the statement and check. The court properly excluded the evidence.

The assignments of error are not well taken, and the judgment should be, and accordingly is, affirmed.