(44 South. 449.)

No. 16,637.

MAX J. WINKLER BROKERAGE CO. v. FIDELITY & DEPOSIT CO. OF MARYLAND.

In re FIDELITY & DEPOSIT CO. OF MARYLAND.

(June 21, 1907. Rehearing Denied June 29, 1907.)

1. INSURANCE—INDEMNITY POLICY—RENEWAL—LIABILITY—APPLICATION.

Upon being solicited by a brokerage firm to execute in its favor an indemnity bond to secure it from loss for one year from acts of larceny and embezzlement by a person whom it proposed to take into its employment, a fidelity insurance company forwarded to it for signature a written application for that purpose, accompanied by a number of questions for it to answer, among them the following: "Have you knowledge of any habit of the applicant, or any circumstances unfavorable to the issuance of the bond applied for? If so, state particulars. Is there now to your knowledge any shortage due? Has he ever been short to you? Is he in debt to you?" To which questions the applicant truthfully answered, "No." The company then executed a bond expiring on the 1st of April, 1904.

Just before the date of the expiration of the bond the company wrote the firm, notifying it that the bond was about to expire, requesting remittance of continuance premium, and asking it to sign the certificate which accompanied its notification and forward the same to it, when the continuation receipt would be sent to it. The firm filled out the certificate which was sent to it, and, after signing it, returned it to the company. The continuation receipt was then sent to the firm. It subsequently appeared that the employé was guilty of larceny or embezzlement partly during the first year of the bond and partly during the continuance of the bond after the expiration of the year. The firm claimed that the company was responsible for

the losses during both periods. The latter resisted the claim. The district court and Court of Appeal sustained the claim of the firm on the ground that the statements made in the continuation certificate were representations, and not warranties, and under the terms of the policy they did not have the effect of a warranty if honestly answered. *Held* error. The company was not liable for the loss which was suffered after the expiration of the year. The certificate, which the firm signed and sent forward, certified that "since the issuance of the above bond the employé has faithfully, honestly, and punctually accounted to me for all money and property in his control as my employé, has always had proper securities, and is not now in default to me."

2. SAME—WARRANTIES—REPRESENTATIONS.

Whether the statements contained in this certificate be designated as "warranties" or "representations," they are undoubtedly matters upon which the company was to determine the course which it was to pursue as to the future. If not true, they destroy the basis upon which the continuance was granted. Brignac v. Life Insurance Co., 36 South. 595, 112 La. 592, 66 L. R. A. 322.

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Orleans.

Action by the Max J. Winkler Brokerage Company against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff was affirmed on appeal by the Court of Appeal, and defendant applies for certiorari or writ of review. Judgment of Court of Appeal and of district court reversed, and cause remanded.

Morgan & Milner, for applicant. Edward Alexander Parsons and Louis Randolph Hoover, for respondent.

NICHOLLS, J. The plaintiff in the suit of the Winkler Brokerage Company against the Fidelity & Deposit Company in its petition to that court alleged that defendant was indebted to it in the sum of $2,000, with legal interest, for this: That on April 1, 1903, it issued its certain bond (No. 291,381) for that amount, in favor of petitioner, for the period of one year from date. That on the 4th day of March, 1904, the said defendant issued its continuation certificate No. 49,976,

continuing in full force the original bond No. 291,381, for the period of one year, ending on April 1, 1905.

That by the terms and conditions of said bond and continuation certificate the defendant company guarantied to reimburse petitioner for any pecuniary loss it might sustain through any act of larceny or embezzlement committed by its resident manager, Frank J. Oser, while in the service of petitioner and in the performance of his duties as resident manager.

Now petitioner averred that the said Frank J. Oser, while acting as resident manager for petitioner, and during the periods covered by the bond and continuation certificate, namely from April 1, 1903, to April 1, 1905, by acts of larceny and embezzlement, and through means of forged papers, committed by said Frank J. Oser, and purporting to be evidences of debt to petitioner, defrauded said petitioner out of a sum exceeding $9,000.

Petitioner alleges that it had fully complied with the terms and conditions of said bond and continuation certificate, in that it notified defendant company promptly of the shortage, larceny, and embezzlement of said Frank J. Oser; also filed with the said defendant company an itemized claim of said loss, and offered all of its books, vouchers, and evidence of said loss for the inspection and investigation of said defendant company.

That petitioner's loss was occasioned by acts of larceny and embezzlement committed by the said Frank J. Oser in his capacity as resident manager for petitioner; and under the terms and conditions of said bond and continuation certificate petitioner made demand upon the defendant company to reimburse to it its loss to the extent of $2,000 as covered by said bond and continuation certificate, but without avail.

In view of the premises petitioner prayed for citation upon said Fidelity & Deposit Company of Maryland, through its agents,

Warner & Black, No. 334 Carondelet street, this city, and after due proceedings had it prays the Fidelity & Deposit Company of Maryland be condemned to pay petitioner, the Max J. Winkler Brokerage Company, the full sum of $2,000, with legal interest from date, together with all costs of suit. And petitioner further prayed for all general and equitable relief.

Defendant answered. After pleading the general issue, it averred that the bond sued on was issued subject to certain obligations imposed upon the said Max J. Winkler Brokerage Company, the performance of which were in said bond declared to be conditions precedent to the right of the said Winkler Brokerage Company to recover under said bond, and said obligations were declared by said bond to be warranties upon the part of said obligee.

That said bond provided:

" 'Whereas, the employer [the Max J. Winkler Brokerage Company] has delivered to the Fidelity & Deposit Company of Maryland, a corporation of the state of Maryland, hereinafter called the "Company," certain statements in writing relative to the employé [Frank J. Oser], his conduct, duties, employment, and accounts, the manner of conducting the business of the employer, and other things connected with the issuance of this bond, which, together with any other statements in writing hereafter made by the employer to the company relating to such matters, do and shall constitute and form part of this contract or any continuation or continuations thereof, and shall be warranties: Now, therefore, in consideration of the sum of * * * and upon the faith of said warranties of said employer as aforesaid, it is agreed * * * to reimburse to said employer up to $2,000 any pecuniary loss it may sustain by any dishonesty or embezzlement of said Frank J. Oser.'

"Now your respondent avers that prior to the renewal of said bond, and before it would consent to renew said bond upon its expiration, it demanded a statement in writing from said Max J. Winkler Brokerage Company, as to the faithful, honest, and punctual accounting of said Oser for all money and property in his control or custody, and whether he always had proper securities and funds on hand to balance his accounts, and whether at the time he was in default; and respondent averred that, complying with said requests and under the obligations of the bond and warranting statement to be true, the said Max J. Winkler Brokerage

Company, on March 25, 1904, made the following statement in writing to respondent:

" 'To Fidelity & Deposit Company of Maryland: This is to certify that since the issue of the above bond Mr. F. J. Oser has faithfully, honestly, and punctually accounted to me for all money and property in his control or custody as my employé, has always had proper securities and funds on hand to balance his accounts, and is not now in default to me.'

"Respondent averred that said statement was and is false and untrue, because said Oser at that date had not faithfully, honestly, and punctually accounted to said Winkler Brokerage Company, and was at that time in default to it.

"That therefore, upon the faith of this written statement to it, it renewed the bond of said F. J. Oser in favor of said Max J. Winkler Brokerage Company, which is the renewal now sued upon, but now claims that by reason of the falsity of said statement and the breach of the warranty of its bond it has been released and discharged from any and all liability to plaintiff.

"And respondent averred that a fraud was perpetrated upon it in obtaining the renewal of said bond.

"In view of the premises respondent prayed that plaintiff's suit be dismissed at its costs."

The district court rendered judgment, in favor of the plaintiff as prayed for, and defendant appealed to the Court of Appeal.

That court, on appeal, affirmed the judgment of the district court, which judgment it maintained on application for a rehearing (Judge Moore dissenting). The judgment of the Court of Appeal was as follows:

"This is a suit on a fidelity bond issued by the defendant to indemnify the plaintiff against acts of larceny and embezzlement on the part of one Oser, an employé of plaintiff, in the performance of the duties of his position. The bond issued on April 1, 1903, for one year from that date, and just previous to its expiration the defendant sent plaintiff a renewal notice, requesting remittance of premium and asking the latter to 'kindly have the certificate below filled in, and signed and forwarded, * * * when the continuation receipt will be sent to you.'

"The certificate referred to reads as follows: 'This is to certify that since the issue of the above bond Mr. F. J. Oser has faithfully, honestly, and punctually accounted to me for all money and property in his control or custody as my employé, has always had proper securities and funds on hand to balance his accounts, and is not now in default to me.'

"The plaintiff signed and forwarded the certificate, and in return received an extension of the bond to April 1, 1905.

"It was subsequently discovered, in March, 1905, that Oser was short in his accounts, and held notes and assignments which he had forged, and that part of the shortage occurred previous to renewal. Upon being notified of this the Fidelity Company denied liability on the ground that the statement signed at time of renewal was false, and, as it was a warranty under the terms of the bond, defendant was consequently discharged.

"The pertinent clauses of the bond in controversy are:

" '(1) Whereas, the employer has delivered certain statements in writing relative to the employé, his conduct, duties, employment, and accounts, the manner of conducting the business of the employer, and other things connected with the issuance of the bond, which, together with any other statements in writing hereafter made by the employer to the company relating to any such matters, do and shall constitute the basis and form part of this contract and continuation or continuations thereof, and shall be warranties.'

" '(2) This bond may be continued from year to year, at the option of the employer, so long as the company shall consent to receive the same; provided, that the liability of the company as surety for the employé to the employer shall not exceed the amount above written ($2,000), whether the loss shall occur during the term of the bond above named, or during any continuation or continuations thereof, or partly during the same term and partly during said continuation or continuations.'

"Among the questions propounded by the defendant before accepting the application we find the following: 'Is there now to your knowledge any shortage due you by the applicant?' And at the end of the list of questions to be answered by the plaintiffs the statement is made that 'it is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued.'

"The application and the bond, which must be read together, agree that the statements of the employer shall be warranted, and shall constitute the basis of both the original contract and the renewal, and the application requires the answer to be merely 'to the knowledge' of the employer.

"The certificate required for the renewal is unqualified, but the notice of renewal which exacts it does not specify that it is a warranty. It is therefore doubtful whether the answer was expected to be absolutely true, or true only to the knowledge of the employer. Although the initial clause of the bond makes all the statements warranties, yet the proviso allows recovery, within a maximum limit of $2,000, for any loss occurring during the course of the bond or any continuation thereof, or partly during the term of both.

"If defendant's theory be accepted, the absurd and unfair consequence would result that an erroneous, though honest, answer, either at

the time of issuance of the original bond or at the time of its renewal, would make recovery impossible, although the insurer holds out to the assured that he can recover under both the bond and its continuation. The language of the United States Circuit Court of Appeals in Guarantee Co. v. Mechanics' Savings Bank & Trust Co., 80 Fed. 778, 26 C. C. A. 146, finds .apt application here:

" 'These solicitors for the new insurance use these vague, indefinite, ambiguous, and misleading words and phrases, that customers may not be deterred by too much visible limitations on the risk, and thus they become what Mr. Circuit Judge Lacombe, in one of the cases we have cited, quoting from the books, calls a "snare for the unwary." The law does not tolerate the spreading of the. net, nor help it to enmesh its victim.'

"In a case in which the answers to the questions were warranted to be true, but in which there was room to doubt if the company intended to exact a literal fulfillment, the Supreme Court of the United States said:

" 'When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for constructions rendering it doubtful whether the party intended the exact truth of the applicant's statement to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligation of a warranty.

" 'The company cannot justly complain of such a rule. Its attorneys, officers, or agents prepared the policy, for the purpose, we shall assume, both of protecting the company against fraud and of securing the just right of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself.' Moulor v. American Life Ins. Co., 111 U. S. 341, 4 Sup. Ct. 466, 28 L. Ed. 447.

" 'Upon the state of facts presented the conclusion must be the same, if the certificate be viewed as a representation.

" 'Unintentional misstatements will not avoid policy, unless willfully erroneous, or grossly negligent, or the assured had knowledge thereof.' 2 Joyce on Ins. par. 1903; Remington v. Fidelity & Deposit Co., 67 Pac. 989, 27 Wash. 429.

"It is shown that the loss was caused largely by forgeries of notes and assignments, difficult of detection, and the plaintiff is not shown to have been negligent or in bad faith. It is therefore entitled to recover."

This judgment of the Court of Appeal has been brought to this court for review.

Among the questions propounded by the defendant to the plaintiff prior to the issuance of the bond (the answers to which were declared to be made the basis of that bond) were the following:

"No. 4 (c). Have you knowledge of any habit of the applicant or any circumstance unfavorable to the issuance of the bond applied for? If so, state particulars."

"No. 15 (a). Is there now to your knowledge any shortage due to you?"

"No. 15 (b). Has he ever been short to you?"

"No. 16. Is he in debt to you?"

To all of which questions defendant answered, "No." It is not claimed that those answers were not absolutely true. No objection can be urged to them, either as to the bond or the continuation of the bond. Just before the date of the expiration of the bond the plaintiff sent to the defendant the following notice:

"We hereby notify you that bond No. 291,381, for $2,000, issued by this company on behalf of F. J. Oser, in your employ as manager, will expire on the 1st day of April, 1904. The continuation premium of $10 should be paid on or before the date of expiration; otherwise the bond will lapse. Kindly have the certificate below filled in and signed, and forward, with remittance for premium, to ———, when the continuation receipt will be sent.

"Yours respectfully,
"Samuel Warfield, President."

Just below this notice, on the same page, on a printed form (with a blank to be filled in, followed with the name of the employé), was the following:

"This is to certify that since the issue of the above bond Mr. ——— has faithfully, honestly, and punctually accounted to me for all money and property in his control as my employé, has always had proper securities, and is not now in default to me.

"Dated Birmingham, Ala., March 25, 1904.
"[Signed] The Max Winkler Brokerage Co."

That blank certificate was prepared by the defendant company and sent forward to the plaintiff for the express purpose, shown on the face of the paper, of determining whether the relations between the parties should extend beyond the date of the expiration of the bond. No questions were propounded to the plaintiff therein, but a direct, absolute certificate was sent to it, to be signed, as to the existence of certain facts. Plaintiff was bound to...

know that upon the sending back of that certificate, worded precisely as it was, with the premium for one year inclosed, would depend whether the relations between the parties should terminate or not. That fact was expressly stated in the notification sent to it. Whether that certificate be designated a "warranty" or a "representation," it was undoubtedly a matter from which the defendant was to decide the course it was to pursue as to the future. Brignac v. Pacific Life Ins. Co., 112 La. 592, 36 South. 595, 66 L. R. A. 322. If the plaintiff did not know how matters stood between Oser and itself at that time, it became its duty to take steps to ascertain them. The condition of things beween them had to be fixed before it could truthfully sign and send off such a certificate. It was not a question of supposition or belief to which it was asked to certify, but a matter of fact. When it certified to something which was not true, we think it destroyed the basis upon which the extension was granted. We think to that extent that defendant's position is correct. We think the relations between the parties terminated on the 1st of April, 1904. We cannot adopt the views of the appellant as to the retroactive effect of that certificate. Both parties looked to it as a matter to operate upon the future, not the past. From the status at that time the rights of the plaintiff and the obligations of defendant had already sprung into existence so far as the bond itself was concerned. The certificate did not change the situation. We are of the opinion that the defendant company is liable to the plaintiff only for Oser's shortage which arose during the existence of the bond itself, and then not to an amount over $2,000, and that it is not liable to the plaintiff for any shortage of Oser towards it which arose after the date of the expiration of the bond itself. We are not in a position to know what the situation between plaintiff and Oser was at the latter date. The cause will have to be remanded to ascertain it, and, this having been done, to render a judgment in accordance with the views herein expressed.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the Court of Appeal brought up for review and the judgment of the district court be and the same are hereby annulled, avoided, and reversed, and this cause is remanded to the district court for further proceedings according to law and in accordance with the view herein expressed. Costs of appeal to be borne by appellee.