(78 South. 727)

No. 21286.

BANK OF COTTON VALLEY v. McINNIS et al.

(April 1, 1918. Rehearing Denied May 27, 1918.)

*(Syllabus by the Court.)*

1. CONTRACTS ⟐1—STIPULATIONS.

It lies within the power of contracting parties to make any stipulation material to the contract, although such stipulations may seem to be of little or no value to either party intelligently entering into a binding contract.

2. INSURANCE ⟐266—FIDELITY INSURANCE— CONTRACT—WARRANTIES.

Where parties to a contract of fidelity insurance make certain facts the basis of the contract, the courts will not assume to correct the understanding of the parties as to the materiality of such facts.

3. INSURANCE ⟐266—FIDELITY INSURANCE— WARRANTIES—AVOIDANCE OF CONTRACT.

Where the parties to such contract have stipulated that a fact is material, the false representation of the existence or nonexistence of any such fact will avoid the contract.

Appeal from Second Judicial District Court, Parish of Webster; J. N. Sandlin, Judge.

Suit by the Bank of Cotton Valley against J. F. McInnis, as principal, and the American Bonding Company and the Fidelity & Deposit Company, as sureties. Judgment for plaintiff, and the sureties appeal. Judgment reversed, and judgment rendered in favor of the sureties, rejecting plaintiff's demand at its cost.

Blanchard & Smith, of Shreveport, for appellants. Roberts & Roberts, of Minden, and Murff & Roberts, of Shreveport, for appellee.

SOMMERVILLE, J. The Bank of Cotton Valley sues J. F. McInnis, its cashier, as principal, and the American Bonding Company and the Fidelity & Deposit Company, as sureties, to recover from the principal, J. F. McInnis, $5,904.93, and from the sureties, $5,000, being the total amount of the surety bond carried by the bank with the defendants to indemnify it for any loss it might sustain by larceny or embezzlement committed by J. F. McInnis during the life of the bond, under certain terms and conditions.

The defendants filed exceptions to the citations, which were overruled. Defendants filed each an exception of no cause or right of action, and these two exceptions were, by agreement, referred to the merits.

The substance of defendants' answers is that they owed nothing under the bond; that the many violations of its terms and conditions released them.

There was judgment in favor of plaintiff and against McInnis for $5,904.93, and against the bonding companies for $5,000. McInnis has not appealed, and the judgment is final as to him. The bonding companies have appealed, and seek to set aside the judgment.

The original bond was for one year, dated May 15, 1911, and a renewal or continuation certificate provided for under the bond was issued by the bonding company for twelve months more on April 6, 1912. The right to continue the bond in force was given upon the payment of a fixed premium, and upon the application of the employer, which application in the instant case read in part:

"This is to certify that since the issuance of the above bond, Mr. J. F. McInnis, hereinafter called employé, has faithfully, honestly and punctually accounted for all money and property in said employé's control or custody as my or our employé, has always had proper funds or securities on hand, and is not now in default as such employé."

This certificate was signed by the Bank of Cotton Valley by its vice president.

The bond sued upon was issued and accepted upon the following conditions, among others:

"That all statements made, or which may at any time be made by the employer, or any of the officers of the employer, in connection with this bond, or any continuance hereof, are warranted by the employer to be true; that the employé has not been in arrears or in default in any position in the employer's service; * * * that if the employer, or any of the officers of the employer, become aware of the employé gambling, speculating, or committing any disreputable, lewd or unlawful act, the employer shall immediately notify the surety in writing; that the employer shall observe, or cause to be observed, all due or customary supervision over the employé for the prevention of default; that there shall be a careful inspection of the accounts and books of the employé at least once in every twelve months from the date of this bond, and that no act giving rise to a claim hereunder shall be condoned, nor shall any loss hereunder be settled without the written assent of the surety; * * * that as long as the surety and the employer agree so to do this bond may be continued in force from year to year, and in case of such continuance, the surety's liability shall be the same as if this bond had been originally written for the term including the period of such continuance."

The continuation certificate was made to cover "the same position and subject to all the covenants and conditions" of the bond.

This suit was brought during the existence of the continuation certificate.

The evidence shows that McInnis, as cashier of the plaintiff bank, defaulted, and there is a final judgment against him for the amount of said defalcation. This defalcation is alleged by plaintiff in its petition to have taken place "during the life of said original bond and continuation certificate by his fraudulent acts of larceny, embezzlement and other fraudulent acts and false entries on the books of said bank of which he had control," etc.

In its application to the American Bonding Company, the plaintiff bank answered, among others, the following questions:

"Is the applicant now, or has he been from any cause, indebted to the bank, or its officers? If so, state particulars, stating amount, how incurred, and how payment is to be secured. A. No."

"Is applicant now, or about to be, engaged in, or interested in, any other business or employ-

ment than in the bank's service? A. Small insurance business."

"In case of the applicant working as teller, will he be required to balance his accounts daily and report same to his superior officers? A. Yes."

"Will a record of such report be kept? A. Yes."

"In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts, and vouchers, and by whom? A. Loan committee of bank once a month."

"Has applicant always faithfully, honestly, and punctually accounted to you for all moneys and property heretofore under his control and custody as your employé? A. Yes."

"Are applicant's accounts at this date in every respect correct, and proper securities, property, and funds on hand to balance his accounts? A. Yes."

"Are the passbooks of your depositors periodically balanced? A. Yes."

"How often? A. Monthly."

"By what employé of the bank? A. Cashier."

"How many officers and employés are engaged in the active service of the bank? A. One."

At the end of the above questions and answers there is an agreement to this effect:

"It is agreed that the above answers shall be warranties, and form a part and be conditions precedent to the issuance, continuance, or any renewal of or substitution for the bond that may be issued by the American Bonding Company of Baltimore, in favor of the undersigned, upon the person above named."

The foregoing questions and answers have been quoted for the reason that each one in turn has been violated by the plaintiff bank; and, as they, under the agreement, are "warranties," and form parts of and are made conditions precedent to the issuance, continuance or renewal of, or substitution for, the bond, they have the effect of defeating plaintiff's claim for indemnity.

As before stated, plaintiff, in its petition, alleges that McInnis, while acting as cashier of the bank and in the employ of petitioner, did, during the life of the said original bond and continuation certificate, defraud your petitioner out of over $5,000 by fraudulent acts and false entries on the books of the bank. Yet, in answer to the question propounded at the time of the issuance of the continuation certificate, the officers of the plaintiff bank answered that McInnis was not indebted to the bank or its officers. Plaintiff seeks to excuse itself on the score of ignorance. But it was its duty to know the condition of the books of the bank, and to know whether McInnis was indebted to the bank or not. The cash of the bank was not balanced daily, as the bank agreed should be done by McInnis. On the contrary, it went many days, sometimes as many as nine days, without being balanced. It was further stipulated that the loan committee of the bank would examine and compare the books, accounts, and vouchers once a month, which was not done. McInnis did not faithfully, honestly, and punctually account to the bank for all moneys and property under his control or custody as employé. The accounts at the date of the continuation certificate, and prior thereto, were not correct; and the property and funds in his hands did not balance his accounts. The passbooks of the depositors of the bank were not balanced monthly. Instead of only one officer or employé being engaged in the active service of the bank, there were several persons, although they were not all employed by the bank. They were in the bank on the invitation of McInnis, and they were discharging the duties of bank clerks to the knowledge of some of the officers of the plaintiff, although, at the time of such service, said officers did not know that the persons referred to were signing and issuing cashier's drafts.

In addition to the small insurance business which plaintiff said McInnis was engaged in with its approval, he was also engaged in the cotton business, to the knowledge of the officers of the bank. The cotton business was clearly speculative, and it had been stipulated in the bond "that if the employer, or any of the officers of the employer, become aware of the employé gambling, speculating, etc., * * * the employer shall immediately notify the surety in writing." This the employer did not do.

[1-3] The statements made by the bank in its application to the bonding company are very material to the contract entered into by it and the defendants, and have very important bearings upon the risk assumed by the latter. They were declared to be warranties, and the nonobservance of those warranties vitiated the contract.

Plaintiff and defendants agreed that the answers to the questions propounded to plaintiff by defendants should be warranties and form parts of and be conditions precedent to the issuance, continuance, or any renewal of, or substitution for, the bond that was issued by the American Bonding Company of Baltimore, in favor of plaintiff.

It lies within the power of contracting parties to make any matter material to the contract, although such matter may seem to be of little or no value to either party to the contract. When the parties themselves have seen fit to make certain facts the basis of a contract of fidelity insurance, the courts will not assume to correct the understanding of the parties as to the materiality of such facts. When the parties have stipulated that a fact is material, the false representation of the existence or nonexistence of any such fact will avoid the contract. Hunt v. Fidelity & Casualty Co., 99 Fed. 242, 39 C. C. A. 496; Willoughby v. Fidelity, etc., Co., 16 Okl. 546, 86 Pac. 56, 8 Ann. Cas. 609.

The case of Ellzey, Receiver, v Massachusetts Bonding & Insurance Co., 77 South. 642,[1] recently decided, was similar in all respects to the facts of this case, and it was therein held that recovery could not be had on the fidelity insurance bond therein sued on. Weil v. New York Life Insurance Co., 47 La. Ann. 1405, 17 South. 853; Brignac v. Pacific Life Insurance Co., 112 La. 574, 36 South. 595, 66 L. R. A. 322; Bertrand v. Franklin Life Ins. Co., 119 La. 423, 44 South. 186; Winkler Brokerage Co. v. Fidelity &

[1] 142 La. 818.

Deposit Co., 119 La. 735, 44 South. 449; Title Guaranty & S. Co. v. Nichols, 224 U. S. 346, 32 Sup. Ct. 475, 56 L. Ed. 795.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendants the American Bonding Company and the Fidelity & Casualty Company of Maryland, rejecting plaintiff's demand at its cost.

O'NIELL, J., concurs in the decree.