CITY BANK & TRUST CO. v. COMMER-
CIAL CASUALTY CO. et al.

No. 5513.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1937.

Rehearing Denied July 19, 1937.

Arthur C. Watson, of Natchitoches, and Jno. C. Hollingsworth, of New Orleans, for appellant.

J. D. Rusca, of Natchitoches, for appellees.

TALIAFERRO, Judge.

Defendant executed and delivered to the Merchants & Farmers Bank of Natchitoches, La., on February 19, 1933, its fidelity bond wherein it obligated itself, under the conditions and within the limitations therein stipulated, to reimburse said bank for any pecuniary loss sustained of money, securities, etc., occasioned by the larceny or embezzlement of its cashier, Lawrence Phillip Cloutier. He absconded on May 17, 1933. A prompt audit of the bank's affairs disclosed a shortage of over $10,000, including a cash deficit of $3,416.-28. On May 20th, there was returned to the bank by the defaulting cashier or his representative, presumably from this identical money, the sum of $2,925, leaving a balance of peculations during the life of the bond of $491.28, which is herein sued for plus penalties and attorney's fees. The cashier's peculations began in June, 1929, and continued regularly to May 17, 1933, when discovered by the bank's president.

On October 16, 1933, plaintiff absorbed the Merchants & Planters Bank. By formal act of transfer, all of its assets were assigned to plaintiff, who, on named conditions, assumed its liabilities. The alleged right of action on the 'cashier's bond, arising from the mentioned defalcations, was specifically described and assigned. The right to institute and prosecute this suit is based upon this act of transfer and said fidelity bond.

Defendant admits the execution of the bond, but for the reasons urged by it, denies that it is now or ever has been obligated to indemnify plaintiff or the insured for the shortage sued for. Alleged breach of warranties and of conditions precedent form the basis of the defense. It avers that on or about January 11, 1933, the Merchants & Farmers Bank, as employer, applied to it for a larceny and embezzlement bond upon Lawrence Phillip Cloutier, as cashier, filing therewith a formal schedule and, as a concomitant, furnished defendant an employer's statement in writing; and specifically names the questions to which false answers were therein given, all of which will be fully discussed hereinafter. The general outline of its defense is disclosed from the following article of the answer:

"Further answering said article, that the Merchants & . Farmers Bank of Natchitoches did make and deliver to defendant an Employer's Statement as the principal consideration for such bond requested, and agreed therein as a condition precedent to the effectiveness of such bond requested, and answered and warranted the an-

swers to the questions contained in said Employer's Statement, and warranted the answers therein made, and the information therein sought, and thereby given as warranties, presently, and in the future, and as conditions precedent to the effectiveness and/or validity of such bond sought, and after which was provided to go into effect under such conditions, and under the conditions contained in said bond, as of date February 19, 1933."

Defendant additionally alleges that had said employer's statement revealed the true conditions then prevailing in said bank, the bond would not have issued; that the reposing of faith in the answers contained in said statement and the belief that they were truthful, formed the basis for the execution and delivery of the bond; and being untrue, no contractual obligation arose from its execution and delivery.

It further averred that the premium of $100 paid it for the bond was accepted in error, superinduced by said misrepresentations and the withholding of information material to the legal existence and binding character of the bond. This premium, with 5 per cent. interest per annum, was tendered.

Cloutier was called in warranty by defendant, under a special provision in the policy whereby he agreed "to protect and indemnify the insurer against any loss, damage, counsel fees and expenses of whatsoever kind that it may sustain or become liable for in consequence of such suretyship," etc., and judgment is alternatively prayed for against him for various amounts named in the answer and call in warranty.

There was judgment for plaintiff as prayed for, and like judgment was rendered for defendant against Cloutier, who made no appearance in the lower court or here. Defendant only appealed.

The bond sued on is here quoted, insofar as is needful to · a discussion of the issues tendered by the pleadings:

"Whereas,—Merchants & Farmers Bank, Natchitoches, Louisiana, * * * hereinafter called the 'employer' employs or intends to employ in various capacities certain persons hereinafter called the 'employes', and has filed with the Commercial Casualty Insurance Company, a corporation duly incorporated under the laws of the state of New Jersey, hereinafter called 'the surety', a schedule specifying the amount of security upon each employe, and the capacity in which each is employed, a copy of which schedule is hereto attached and made a part hereof, and said employer has also delivered to the surety a statement in writing containing certain statements and promises relative to the duties and accounts of the employes and other matters, it is hereby understood and agreed that those statements and such promises and any subsequent statements or promises of the employer, hereafter required by or lodged with the surety, are warranted by the employer to be true, and shall constitute a · part of the basis and consideration of the contract hereinafter expressed.

"Now, therefore, the surety, in consideration of an agreed premium, and upon the faith of said statements and promises of the employer as aforesaid, hereby agrees that it shall reimburse the employer for any pecuniary loss sustained of money, securities, merchandise or any property occasioned by any act or acts of larceny or embezzlement by any of the employes listed hereunder, in the performance of the duties of the positions and schedules specified, during the period commencing from February 19th, 1933, to February 19, 1934, subject to the conditions expressed in this bond, which shall be conditions precedent to the right of the employer to recover hereunder."

The employer's statement was executed by the bank's president. It discloses that Cloutier had been its cashier for the previous six years; that his duties, inter alia, included the handling and accounting for all the bank's cash and the keeping of its general books. We also quote from this statement the questions therein propounded to the bank and the answers given by its president, the falsity of which is largely relied upon by defendant to defeat recovery:

"Q. No. 10. Have you so systematized your business that books, accounts or vouchers kept by other employees will serve as a check upon employee in such position and enable you by an examination and comparison to detect and discover any act of fraud or dishonesty on the part of employee? A. Yes.

"Q. No. 11. (a) How often will a thorough examination of employee's books and accounts be made by an auditor or expert accountant; and cash, securities, etc., be counted, compared and verified with accounts and vouchers? A. Twice yearly by State Bank Commissioner. Twice

yearly by committee appointed by board of directors.

"(b) When was such an examination of employee's books and accounts, cash and securities, last made? A. December 16, 1933. By Committee from directors.

"(c) Were they in every respect correct? A. Yes.

"Q. No. 12. (a) Will monthly statements be sent out directly to all debtors as shown by your books, so as to ascertain whether or not employee is promptly accounting for all collections made or received? A. Yes.

"(b) Who will send them out? A. Assistant Cashier.

"(c) Who will receive the replies? A. President."

The undisputed testimony shows that the bank's condition was never checked and audited by expert accountants and its mail was invariably delivered to Cloutier by the porter, who called for and received it at the post office. The president really never had much or any contact with the details of the bank's routine business. It was left almost entirely to the cashier, as has too often happened in small banks. It is also undisputed that the bank at no time had its business so systematized that the books, accounts, and vouchers kept by other employees would serve as a check upon Cloutier's official acts to any worthwhile extent; and, finally, the answer that the books and accounts of the bank were in all respects correct when checked on December 16, 1933, is wholly untrue, though honestly given. It goes without saying that had the answers in the employer's statement not been as therein given, the application for the bond would not have been favorably acted upon.

■ It is plaintiff's contention that the answers made by its president in the statement were not warranties and have not the effect of such because—

(a) Said statement and the application were not physically annexed to or made part of the bond by specific reference;

(b) That neither were copied into the bond;

(c) That neither were sufficiently referred to or described in the bond to identify them as a part of it.

For these and other reasons, unnecessary to mention, the admissibility of said documents was objected to by plaintiff. The objection is renewed here. It is not tenable. It will be observed from the first paragraph of the bond, quoted above, that the employer had delivered to the surety a statement in writing containing certain statements and promises relative to the duties and accounts of its cashier, and other matters, and that "it is hereby understood and agreed that those statements and such promises * * * *are warranted by the employer to be true, and shall constitute part of the basis and consideration of the contract hereinafter expressed."* And it is also stipulated in the bond that "upon the faith of said statements and promises," the surety undertakes performance of the obligation assumed by it in the bond contract, subject to the conditions therein expressed, "which shall be conditions precedent to the right of the employer to recover hereunder."

We are unable to concur in plaintiff's contention. We think the reference in the bond to the employer's statement sufficiently definite to read into it the questions and answers which form the basis of the defense, and that the language employed to accomplish this result certainly indicates an intention on the part of the parties to do this.

■ It is our opinion that the falsity of the answers to questions 10 and subdivision (c) of question 11, above quoted, made it impossible for the bond to be effective. These questions were highly material to the surety's interest and true answers to them were indispensable prerequisites to its consent to bond the cashier. The first of these warranties was breached because the system therein mentioned did not prevail at the date of bond and was not thereafter instituted, and the second answer had the effect of apparently disclosing a material status which did not exist.

■ 14 Ruling Case Law, p. 1026, §§ 206, 207, and 208, gives the following lucid exposition of warranties as applied to insurance contracts and the difference between them and representations:

"The general rule in regard to what constitutes a warranty in a contract of insurance is well settled. Any statement or description, or any undertaking on the part of the insured, on the face of the policy or in another instrument properly incorporated in the policy, which relates to the risk, is a warranty. A warranty is in the nature of a condition precedent; it must appear on the face of the policy; or, if on another part of it, or on a paper

physically attached to it, it must appear that the statements were intended to form a part of the policy; or, if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it, but it is not necessary that statements in an application be set forth in the policy. * * *

"Warranties in policies are affirmative or express, and promissory or executory. There may be several warranties, and of each class, in one policy. An express warranty is an agreement contained in the policy whereby the assured stipulates that certain facts relating to the risk are and shall be true, or certain acts relating to the same subject have been or shall be done. A promissory warranty, on the other hand, is an agreement that something shall or shall not be done after the risk has attached. * * *

"The distinction between a representation and a warranty in an insurance contract is, that the former precedes and is not a part of the contract, and need be only materially true, while the latter is part of the contract and must be strictly fulfilled, or the policy is void. Another difference between a warranty and a representation is that a warranty must be strictly true; a representation need only be substantially true. The falsity of a representation may render the contract voidable for fraud; but a noncompliance with a warranty is an express breach of the contract. Although the effect of a breach of a warranty and of a material misrepresentation may be the same on a policy, yet they cannot be confounded together in deciding on pleadings or on a special verdict. * * *

"As stated heretofore, a warranty must appear on the face of a policy or in another part of it or on another paper so referred to as to become a part of the contract. It is therefore necessary to consider what is a sufficient reference to make a statement a warranty. Preliminarily it may be said that the courts lean against a construction of a statement by an applicant as a warranty, and unless it is clearly shown by the form of the contract to have been intended by both parties to be a warranty, to be strictly and literally complied with, it will be held to be a representation. But where, taking the whole instrument together, it is obvious that the insurer has made the strict and literal exactness of the answers a condition of the contract of

insurance and a warranty on the part of the insured, it cannot be deprived of the advantage thus secured, for it has a legal right to say that it will determine for itself what is or is not material to the risk."

The jurisprudence of this state on these questions harmonizes with the above-quoted expressions.

In Brignac et al. v. Pacific Mutual Life Insurance Company, 112 La. 574, 36 So. 595, 66 L.R.A. 322, a principle is announced as follows: "When answers made by party in his application for a policy of life insurance to questions propounded to him by the insurance company were such as might have influenced the company in determining whether to accept the risk and in determining what premium to charge, the answers must be truthful." That case involved a life insurance policy. In the application of the policy the question was asked: "Do you use spiritous, malt or vinous liquors?" The answer was: "No." The insured did use these liquors moderately and temperately. The answer being literally untrue, worked a forfeiture of the policy.

In Max J. Winkler Brokerage Company v. Fidelity & Deposit Company, 119 La. 735, 44 So. 449, the language of the bond was very much like that sued on herein, with the exception that therein the written statements relative to the employee were declared warranties and were expressly made a part of the bond. There the bond was about to expire, and to procure its renewal, the insured's president certified to the surety company that since the issuance of the bond its defaulting manager had faithfully, honestly, and punctually accounted for all moneys and properties of the principal coming into his hands, and was not then in default. The certificate was untrue, though honestly made by the executive officer. Nevertheless, the court held that because of the falsity of the certificate, the renewal of the bond was null and void. The ignorance of the officer signing the certificate of the falsity of the facts therein set out did not save the bond.

It was held in Ellzey v. Massachusetts Bonding & Insurance Company, 142 La. 818, 77 So. 642, that the failure by the indemnitee to comply with a promissory warranty vitiated the fidelity bond therein involved. The promise was to monthly audit the books kept by the indemnitee's defaulting president.

The case of Bank of Cotton Valley v. McInnis et al., 143 La. 436, 78 So. 727, 728, involved a bond given to protect the plaintiff against the dishonesty of its cashier, who subsequently defaulted. The bond was renewed upon the certification of the bank's president of the same substance and import as the one involved in the Winkler Brokerage Company Case, which was wholly untrue. The court on this phase of the case said: "Plaintiff seeks to excuse itself on the score of ignorance. But it was its duty to know the condition of the books of the bank, and to know whether McInnis was indebted to the bank or not. The cash of the bank was not balanced daily, as the bank agreed should be done by McInnis."

There are many other cases which reaffirm the principles enunciated in those above mentioned, including: Davis v. National Fire Insurance Company, 169 La. 63, 124 So. 147; Thompson v. State Assurance Company, Ltd., 160 La. 683, 107 So. 489; Boulanger v. British Underwriters et al., 141 La. 461, 75 So. 207.

Plaintiff chiefly relies to succeed upon Slidell Savings & Homestead Association v. Fidelity & Deposit Company, 178 La. 548, 152 So. 121. We do not think that case sustains its position. The fidelity bond therein interpreted contained no stipulation that the answers made in the application therefor should be deemed as warranties or that they were made a part of the bond. It was said in the application itself that the answers should be warranties. The court held that this was not sufficient. In disposing of this issue the court said:

"This agreement, however, was never carried out by referring in the bond to the application, and making it a part of the bond, or by reciting in that instrument in unequivocal language that the answers to the questions should be deemed warranties. The recital of these matters in the application alone was insufficient. Reference to them should be made in the bond itself, and not simply in a separate instrument."

In passing, the court stated that the Winkler Brokerage Company and Ellzey Cases, above discussed, and the Davis v. National Fire Insurance Company Case, above cited, are not in conflict with the views expressed by it.

For the reasons assigned, the judgment appealed from is hereby annulled, avoided, and reversed, and plaintiff's suit dismissed, at its costs.