## HANDELMAN'S CHAIN STORES v. MARYLAND CASUALTY CO.*

### No. 16918.

Court of Appeal of Louisiana. Orleans.

Dec. 12, 1938.

*Rehearing denied Jan. 10, 1939.

Yarrut & Stich, of New Orleans, for appellant.

Monroe & Lemann, of New Orleans (Walter J. Suthon, Jr., of New Orleans, of counsel), for appellee.

JANVIER, Judge.

This is a suit on a fidelity bond. The defenses are that the loss is not shown to have been one within the contemplation of the bond and that the claimant (employer) did not comply with certain warranties which the surety contends were made in connection with the bond. There was judgment for defendant and plaintiff has appealed.

Handelman's Chain Stores, a commercial partnership, during 1933–1935, operated a retail store in the town of Thibodaux, Louisiana. It appears that in June, 1933, Preston J. Field was appointed general manager of the said store and was required to furnish a fidelity bond in the sum of $1,000. Maryland Casualty Company had previously executed many other such bonds for employes of the said employer and— apparently at the request of the said employer—it agreed to execute the bond required by the employer and applied for by the employe, Field. In accordance with its custom it sent the employer a printed form on which there were many questions concerning the duties of the said Field and the methods which would be resorted to by the employer in keeping itself advised concerning the conduct of the affairs entrusted to him. When these questions were answered by the employer, the bond was issued under date of June 13, 1933. Renewal premiums have been paid regularly since and it is conceded that, at the time of the alleged shortage which forms the basis of this suit, the bond was in full force and effect.

On the morning of Monday, December 23, 1935, Field, the bonded employe, reported by telephone from Thibodaux to the employer in New Orleans that the store had been robbed between the closing on the preceding Saturday night and the opening on that Monday morning. A subsequent check showed a shortage of $268.44 in cash and of $2,065.73 in merchandise. But the employer reached the conclusion that there had been no robbery and that the said bonded employe, Field, by fraudulent means, had for some time been retaining cash received from customers for goods sold and failing to report the sales, and also had taken cash from the cash register and had reported the alleged robbery in order to hide his own peculations. Thereupon demand was made on the surety company for settlement under the bond, but that company, maintaining that the employer had breached certain warranties made when the bond was issued, that an earlier default of the same employe had not been reported and, also, that it had not sufficiently appeared that the loss was one within the coverage of the bond, refused to make payment. This suit has resulted.

In addition to the face amount of the bond, $1,000, plaintiff claims attorney's fees and a penalty, both as provided for by Act No. 37 of the Extra Session of 1921.

If there was a breach of warranty on the part of the employer, then there can be no recovery even if the bonded employe is shown to have been guilty of the acts charged to him, and we, therefore, turn to the question of whether there was such breach of any warranty made by the employer in executing the bond, or in any statement properly referred to in and sufficiently connected with the said bond.

No warranties were contained in the bond itself, but in it there appeared a stipulation to the effect "that all statements which the employer has furnished to the Company concerning the employe or his duties or accounts are warranted by the employer to be true; * * *".

It is admitted by plaintiff that there was no compliance with certain of the obligations which were assumed in the statement made in connection with the employe's application for the bond and it is further conceded that, if all of the said obligations can be classified as warranties and can be read into the bond as inducements for the issuance thereof, then there can be no recovery.

The particular obligations which were assumed by the employer in the statement made in connection with the application for the bond and which obligations, it is contended, have been breached, were:

(1) That at least once in every three months inventory of stock goods and samples would be made by special representatives.

(2) That at least once in every thirty days the applicant's books, accounts and securities would be inspected and audited by special representatives.

It is argued that such breach as there may have been was not of one of those obligations which were sufficiently referred to in the bond as warranties to permit that it be held that a breach thereof should defeat recovery.

█ It has been determined in this state that a promise made in connection with an application for such a bond is not to be considered as a warranty the breach of which would defeat recovery unless such promise is stated to be a warranty and unless, if made in some other document than the bond itself, it is carried over into the bond by language which shows a definite intention to make it a part of the said bond.

█ In Slidell Savings & Homestead Association v. Fidelity & Deposit Co. of Maryland, 178 La. 548, 152 So. 121, the statement which the employer made as an inducement for the issuance of the bond read as follows [page 123]: "'It is agreed that the above answers shall be warranties and shall constitute the basis of and form part of the bond, or any continuation or continuations of same that may be issued by the Fidelity & Deposit Company of Maryland to the undersigned, upon the person above named. And it is agreed that the duties, powers and remuneration of the employee and obligations of the employer as stated in the above warranties shall remain unchanged during the currency of this bond or any continuation or continuations thereof.'"

Yet the Supreme Court held that the breach of any covenant contained in that statement could not defeat recovery since, in the bond itself, there was no reference to those covenants as being warranties made in connection with the bond: "This agreement, however, was never carried out by referring in the bond to the application, and making it a part of the bond, or by reciting in that instrument in unequivocal language that the answers to the questions should be deemed warranties. The recital of these matters in the application alone was insufficient. Reference to them should be made in the bond itself, and not simply in a separate instrument."

In the case at bar there is in the bond itself a clear reference to certain statements made by the employer as an inducement for the issuance of the bond for the applicant-employe, so that the argument that none of the promises made can be considered as warranties is not well founded.

█ But it is also argued that the covenants contained in the statement of the employer are not all referred to in and made part of the bond and that the breaches pointed to by the defendant as preventing recovery are not of warranties carried over into the bond by reference thereto; in other words, that, though the employer, in the statement, promised that it would do certain things and that it would require the employe to do certain other things, when those promises were referred to in the bond only those concerning the employe and what he would be required to do were, in the bond itself, referred to as warranties. This argument is based on the wording of the bond, which, it is quite true, does not make all promises made in the said statement warranties, but only those made "concerning the employe or his duties or accounts", and the plaintiff maintains that there is shown no breach of any warranty concerning the said employe or his duties or his accounts, but that the only covenants or promises which were not carried out were those concerning the methods which would be employed by the employer to ascertain whether the employe was properly and honestly conducting his affairs.

At first glance this argument would seem to be technical in the extreme. Yet we must bear in mind two things: First, that the obligation of the surety was not undertaken gratuitously, and, second, that the document, the language of which may be said to be ambiguous, was prepared by the surety itself, and that, therefore, if there is possibility of misunderstanding of its terms, such ambiguity should be interpreted adversely to the surety.

In Grand Lodge v. Massachusetts Bonding & Ins. Co., 324 Mo. 938, 25 S.W.2d 783, 785, is found a case in which was made the same contention—that the warranties referred to in the bond were limited to those promises made concerning the employe and that none of those had been breached. There, in connection with an application by an employe, the employer executed a written statement concerning the duties and accounts of the employe and also concerning the audits which the em-

ployer undertook to make of the employe's accounts. There was a shortage and the employer made claim. The defense was breach of warranty in that the employer had not made the periodical audits which, in its statement, it had agreed to make. The employer asserted that in the bond itself there was contained no warranty concerning these audits, but that it was only in the statement that the promise to make them had been contained. The statement was not in its entirety made a part of the bond, which provided that [page 785] "all representations made by the employer to the surety relative to the employee in connection with the issuance of this bond or any continuation thereof are warranted to be true". The court, referring to the statement concerning audits, etc., to be made by the employer, said:

" * * * These statements are not relative to the employee, nor do they relate to the character or conduct of the employee, either past or present, or to the duties he will be required to perform or the manner in which he should perform them. They relate solely to what the Grand Master and the Grand Lodge represented they would do in event the bond was given. In other words, the statements relate to the future conduct of the employer and not to that of the employee, and for that reason they are not incorporated in the bond by reference because the bond refers only to statements made by the employer to the surety relative to the employee."

The same may be said here. In the statement made by the employer there were certain promises. It was agreed that certain periodical audits would be made and that, at regular stated intervals, inventories would be taken. But it was likewise agreed that these things would be done by special representatives and nowhere in the bond itself is reference made to those things which were to be done by others than the bonded employe himself. The only reference in the bond to promises of the employer is to those things which the employe was to do, or concerning his accounts. The record shows that the bonded employee kept no accounts and, therefore, it cannot be and has not been shown that there was any breach of any provision made concerning those accounts. In fact, the only breach actually shown was of the promise to take an inventory once every three months by a special representative and to inspect and audit the books, accounts, stock and securities once in every thirty days. But, as we have said, these things were to be done not by the employe, but by special representatives of the employer, and nowhere in the bond is it stipulated that those promises were to be considered as warranties made in connection with the issuance of the bond.

It is argued that the reference in the bond to the statement made by the employer was not intended to be limited to those provisions "concerning the employe or his duties or accounts" and that those words were merely inserted for the purpose of identifying the statement referred to and that, therefore, since the statement is referred to in the bond itself, everything classified in the said statement as a warranty should be considered as such. But we cannot accept this interpretation in view of the result reached by the Supreme Court in Slidell Savings & Homestead Ass'n v. Fidelity & Deposit Co., supra, for there the Supreme Court clearly announced the doctrine that no promise should be considered as a warranty unless definitely set forth in the bond itself, or so clearly referred to therein as to leave no room for doubt as to the intention of the parties to make it a warranty made in connection with the issuance of the bond. Had that been intended here, nothing would have been simpler than to state that every promise made in the statement should be considered as a warranty. This was done in the policy which was considered in Ellzey v. Massachusetts Bonding & Ins. Co., 142 La. 818, 77 So. 642. There all statements and answers were made a part of the policy itself, which, as counsel for plaintiff show, contained a reference to such a statement in the following language: "which statement is made a part hereof". Obviously, this language is much more general than is that in the bond in the case at bar. The reference in the Ellzey Case is all-inclusive, whereas here the reference is limited to the statements or promises made "concerning the employe, or his duties, or accounts".

Likewise, in Bank of Cotton Valley v. McInnis et al., 143 La. 436, 78 So. 727, the bond itself contained an all-inclusive reference [page 728] "that all statements made, or which may at any time be made by the employer, or any of the officers of the employer, in connection with this bond, or any continuance thereof, are warranted by the employer to be true * * *". There were no restricting or limiting words

as there are in the bond here. Suppose, for instance, there had been added to the above quoted language some such restrictive words as we find before us. Then the reference would have read "that all statements made concerning the employe or his duties or accounts". What a vast distinction would have been caused thereby!

In City Bank & Trust Company v. Commercial Casualty Co. et al., La.App., 176 So. 27, the statement made by the employer was referred to in the bond in the following language [page 29]: "A statement in writing containing certain statements and promises relative to the duties and accounts of the employees and other matters". Here it is clear that there was no intention to limit the warranties to the statements concerning the employes and their accounts, for the inclusion of the words "and other matters" made the phrase a descriptive one and showed plainly that it was the purpose of the parties to use the language merely as descriptive of the general statement and to classify each promise made in that general statement as a warranty.

In Winkler Brokerage Co. v. Fidelity & Deposit Co. of Maryland, 119 La. 735, 44 So. 449, the bond itself contained a reference which was all-inclusive since it made a part of the bond "certain statements in writing relative to the employé * * *, his conduct, duties, employment and accounts, the manner of conducting the business of the employer, and other things connected with the issuance of this bond, which, together with any other statements in writing hereafter made by the employer to the company relating to such matters, do and shall constitute and form part of this contract or any continuation or continuations thereof, and shall be warranties". [Page 450.]

We can reach no conclusion other than that the words used in the reference in the bond in the case before us limited the warranties contained in the employer's statement to those promises which concerned the employe, his duties and accounts, and did not include those promises which concerned other things to be done by the employer or by special representatives. Consequently, whatever the employer may, in the statement, have undertaken, those undertakings were not by proper reference in the bond made warranties the breach of which should defeat recovery.

When we consider the evidence concerning the loss itself, we can reach no conclusion other than that the losses sustained by the employer resulted from dishonest acts on the part of the bonded employe; in other words, that the "robbery" which the employe reported did not actually occur. The evidence of the town officials and of others shows that, if there had been a robbery and all the goods which are shown to be short had been taken off at one time as they would have been in a robbery, it would have required a very large truck and that no such movement would have been possible under all the circumstances which are shown. In addition to this, other employes of the plaintiff testify that the bonded employe had instructed them not to report certain cash sales made after a certain hour each day, but to put the cash in a special tin box, and that he had told them he was doing this for the purpose of providing cash to adjust mistakes or return of goods, whereas, as a matter of fact, he was merely abstracting the cash.

We do not deem it necessary to discuss in detail the evidence concerning the alleged robbery since we believe that it clearly establishes the fact that there was no such robbery and that the bonded employe was guilty of the peculations and irregularities charged against him. We feel, therefore, that the shortage is within the coverage of the bond and that, since the shortage is shown to exceed the amount of the bond, there should be recovery for the full amount of the bond.

There is another contention that there should be no recovery because the employer failed to report to the surety company an earlier loss allegedly caused by the peculations of the same bonded employe. The evidence as to that loss, however, shows that it was of a minor amount and that the employer at that time took the position that it was within the usual limits of losses resulting from shoplifting and that there was no substantial evidence on which could have been based a charge that the bonded employe was guilty. The amount of that shortage was $66.36 and the employer showed that this was well within the usual 1% loss due to shoplifting, errors and honest mistakes. The failure to report such a loss should not defeat recovery for a loss later sustained.

Plaintiff maintains that, because of the provisions of Act No. 37 of 1921, Ex. Sess., since payment has been withheld for sixty days, defendant should be required

to pay, in addition to the payment of the principal provided for in the bond, "3% per month, with a minimum of 12% and a maximum of 50% damages on the total amount of the loss as may be determined by a court of competent jurisdiction, together with all reasonable attorney's fees for the prosecution and collection of such loss * * *".

In Slidell Savings & Homestead Ass'n v. Fidelity & Deposit Co., supra, though the court rejected the main defense, it refused to assess this penalty, saying:

" * * * the judge should not have allowed the penalties, which include attorney's fees, because it seems to us that the defense, although it has failed, was, in the language of the statute, upon just and reasonable grounds."

The defense here was certainly based in good faith upon the belief that it was well founded as a matter of fact and as a matter of law. That it was not frivolous or groundless to such an extent as to justify the awarding of the penalty is, we think, evidenced by the fact that the district judge believed that it should be sustained. We find no reason here to inflict the penalty provided for by the statute.

We next consider the question of whether interest should be allowed on the amount due. Plaintiff did not pray for interest except that which is, in certain cases, authorized by Act No. 37 of the Extra Session of 1921 as a penalty. The question presented, then, is whether or not the prayer for that interest—which prayer has been denied—should be considered as sufficient to authorize the awarding of the interest which is now authorized by Art. 1938 of the Civil Code. Friede v. Myles Salt Co., Ltd., La.App., 177 So. 105. We find that an almost identical question was considered by the Supreme Court in Crowe v. Equitable Life Assurance Soc. of U. S., 179 La. 444, 154 So. 52. There, in the original petition, there was no prayer for interest, though there was a prayer for the penalty to which plaintiff claimed to be entitled under a special statute. In answer to the appeal plaintiff reiterated the prayer for the special penalty and, in the alternative, prayed for legal interest. The Supreme Court said [page 55]:

" * * * But plaintiff did not claim or pray for interest in his original petition. Hence, interest cannot be allowed by the judgment. Code Prac., arts. 157, 553; Alcolea v. Smith, 150 La. 482, 90 So. 769, 24 A.L.R. 815; Merchants' & Farmers' Bank & Trust Co. v. Hammond Motors Co., 164 La. 57, 113 So. 763; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742. And the prayer for the statutory penalties does not warrant the allowance of interest by a decree of the court."

In view of this decision no interest can be allowed here.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff, Handelman's Chain Stores, a commercial co-partnership composed of Charles Handelman, Ray Handelman Maslansky, Gertrude Handelman Roth, Tillie Handelman and Maurice Handelman, and in favor of the said members of the partnership, and against defendant, Maryland Casualty Company of Baltimore, Maryland, in the full sum of $1,000 and for all costs.

Reversed.